(149 P.3d 876)
No. 94,503

STATE OF KANSAS, *Appellee*, v. FRED L. ROSS, *Appellant*.

Opinion filed January 19, 2007.

*William Drexler*, legal intern, and *Nathan B. Webb*, of Kansas Appellate Defender Office, for appellant.

*Jay Sizemore*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and BUKATY, S.J.

MCANANY, J.: Officer Brandon Huntley followed a northbound automobile driven by Fred L. Ross on Interstate 135 near Newton for about 2 miles when he observed Ross' automobile cross over the fog line, the solid white line at the right edge of the outside lane. This occurred only once. Huntley pulled Ross over for this infraction.

Huntley explained to Ross that he stopped him because, although it was not "any real big deal," his vehicle had crossed the fog line a little. The officer assured Ross that he would not receive a ticket because it was a little windy. When the officer requested

identification, however, Ross provided only an out-of-state identification card. Ross informed the officer that his license had expired, and the officer confirmed Ross' statement through dispatch. The officer then arrested Ross for driving without a valid driver's license. While Ross was handcuffed, the officer searched Ross' pockets, locating a ratchet socket and $642. The socket contained a piece of Brillo pad and some white residue. When Ross was taken to jail, a further search of his person yielded a cellophane wrapper containing white rocks which, along with the residue in the socket, later proved to be cocaine.

The State charged Ross with possession of cocaine; possession of drug paraphernalia; driving with a canceled, revoked, or suspended license; and failing to maintain a single lane. Ross moved to dismiss the charges at the preliminary hearing, arguing that the traffic stop was not supported by reasonable suspicion of criminal activity. His motion was denied. He renewed the motion at trial, and again it was overruled. Following a bench trial Ross was convicted on all but the license charge. He received a sentence of 13 months in prison but was granted 12 months' probation.

Ross now appeals. He challenges the district court's determination that the traffic stop was justified by reasonable suspicion that he violated K.S.A. 8-1522(a) by crossing the fog line. He argues that his conduct under the circumstances did not constitute a violation of K.S.A. 8-1522(a). If he is correct, his conviction for violating K.S.A. 8-1522(a) must be reversed, along with his convictions for possession of cocain and drug paraphernalia since all the evidence that supports these drug convictions was obtained as a result of the traffic stop.

In reviewing the district court's ruling we look to see if there is substantial competent evidence to support the court's factual findings and then examine anew whether the facts require the suppression of evidence at trial. See *State v. Green,* 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004). When the issue turns on the interpretation of a statute, a matter of law over which our review is unlimited, we seek to determine the legislature's intent. When the language of a statute is unambiguous, we give effect to the legislature's intent as expressed. In doing so, we

give words not otherwise defined their common, ordinary meanings. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit the government from conducting unreasonable searches and seizures. Courts determine reasonableness in this context by balancing the State's interest against the individual's interest to be secure from unwarranted governmental intrusion. *Terry v. Ohio*, 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). K.S.A. 22-2402, which codifies *Terry*, requires a showing of reasonable suspicion of criminal activity before a law enforcement officer can conduct a stop. *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993). Because the stop of a vehicle on a public roadway always constitutes a seizure, an officer must have specific articulable facts and reasonable inferences that criminal activity has occurred, is occurring, or is about to occur to justify the stop. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

Ross was stopped for a claimed violation of K.S.A. 8-1522(a). The statute, in relevant part, provides:

"Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.

"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." K.S.A. 8-1522.

Ross argues that because the statute only requires a driver to maintain a single lane "as nearly as practicable," his failure to maintain a single lane does not necessarily constitute a violation of K.S.A. 8-1522(a). We agree. "As nearly as practicable" connotes something less than the absolute. Automobiles are not railway locomotives. They do not run on fixed rails. Obviously, K.S.A. 8-1522(a) does not prohibit a vehicle from changing lanes. A driver is permitted to exercise, rather is *required* to exercise, discretion in deciding when and whether to change lanes. We need not drive through a pothole in the road and damage our vehicle in the process when we may safely avoid it by changing lanes or moving partially onto the shoulder of the roadway. K.S.A. 8-1517 permits

us to leave our regular lane of travel to pass a slower moving vehicle when we overtake it. A stalled automobile or a fallen tree limb in the roadway ahead does not require us to wait for its removal. We drive around it. In doing so, the essential gravamen of K.S.A. 8-1522(a) comes into play. We may move from our lane of travel only after first determining it is safe to do so.

The issue is whether Officer Huntley, under the circumstances presented, had reasonable suspicion of a violation of K.S.A. 8-1522(a) to justify a traffic stop. When a defendant moves to suppress evidence based upon a claimed illegal stop, the burden shifts to the State to establish that the officer had reasonable suspicion to effect the stop. See *State v. Shelton*, 278 Kan. 287, 292, 93 P.3d 1200 (2004). In the context of an alleged violation of K.S.A. 8-1522, this requires more than a showing by the State that a defendant moved from the regular lane of travel, since it is not illegal to change lanes when it is not done in violation of some other statute and it is safe to do so. Thus, in articulating reasonable suspicion that a traffic offense has occurred in order to justify the traffic stop, the totality of the circumstances must make it appear to the officer that not only did the defendant's vehicle move from its lane of travel, but it left its lane when it was not safe to do so.

The present case stands in interesting contrast to *United States v. Cline*, 349 F.3d 1276 (10th Cir. 2003). *Cline* dealt with the legality of a traffic stop for crossing the fog line in violation of the same Kansas statute. However, in *Cline* the trooper observed the defendant's vehicle cross the fog line and almost strike a bridge rail. "He further testified . . . that nearly striking a bridge abutment was a dangerous driving violation." 349 F.3d at 1287.

In *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), the officer observed the defendant's van cross 2 feet onto the right shoulder of the emergency lane on an interstate highway in Utah. The Utah statute was identical to the Kansas statute now before us. The officer testified that the defendant's conduct could indicate he was sleepy or intoxicated. One of his reasons for stopping the defendant was "to see if the driver was awake." 79 F.3d at 976. The court in *Gregory* observed:

"The road was winding, the terrain mountainous and the weather condition was windy. Under these conditions any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity. The driver may have decided to pull over to check his vehicle and then have a sudden change of mind and pulled back into the traffic lane. Since the movement of the vehicle occurred toward the right shoulder, other traffic was in no danger of collision. These facts lead us to conclude that the single occurrence of moving to the right shoulder of the roadway which was observed by Officer Barney could not constitute a violation of Utah law and therefore does not warrant the invasion of Fourth Amendment protection." 79 F.3d at 978.

In the present case, Ross was proceeding northbound on I-135 near Newton. We presume that the right shoulder of the highway was paved, as is the normal situation, since there is no evidence to the contrary. There was no testimony that there was any obstacle or barrier on the shoulder that presented an immediate danger. There was no testimony that sand, gravel, or debris on the shoulder presented a hazard to a motorist who directed his or her vehicle onto the shoulder. There was no testimony that Huntley was concerned that the driver might have been falling asleep or was intoxicated. Ross' vehicle was not weaving back and forth on the roadway. He was not using the paved shoulder as a regular lane of travel. He crossed the fog line only briefly, for only a short distance, and only once. In short, there was no reasonable suspicion that Ross was engaged in the conduct that is at the heart of the statute: moving a vehicle from its lane of travel without first ascertaining that it could be done safely. Absent any such concern on Huntley's part, there was no reasonable suspicion to warrant stopping Ross and, therefore, insufficient evidence to support his convictions. The district court erred in not suppressing the evidence obtained by this unsupported governmental intrusion.

Reversed.