**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JASON L. FINNEY, SR.,

Defendant-Appellant.

No. 08-3244

(D. of Kan.)

(D.C. No.08-CR-10010-WEB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA, TYMKOVICH**, and **GORSUCH**, Circuit Judges.[**]

---

Jason L. Finney conditionally pleaded guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). In his plea agreement, Finney preserved his right to appeal two issues: (1) the district court's denial of his motion to suppress evidence seized after a traffic stop, and (2) Congress's

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Commerce Clause authority to enact § 922(g)(1). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM.

## I. Background

In the early morning hours of April 8, 2007, Wichita police officers Cavitt and Molde were on duty and driving down Central Avenue, a four-lane street with two lanes of traffic running in each direction. Both officers were members of the Special Community Action Team (SCAT), a Wichita police department drug enforcement and gang suppression unit.

While driving down Central Avenue, in an area close to where numerous bars are located, Officers Cavitt and Molde observed a silver Cadillac ahead of them appearing to drive too fast—especially in light of the upcoming curves in the road. Officer Cavitt, driving the police cruiser, sped up to close the gap to the Cadillac.

As the officers caught up to the vehicle, they noticed it swerve back and forth within its own lane. At some point later, they also observed the vehicle temporarily move from the curb-side lane to the inside lane, hesitate, and then move back to the curb-side lane. The officers later testified to differing accounts of this particular maneuver by the Cadillac: Officer Molde stating that the vehicle had failed to signal the lane change, while Officer Cavitt stated that it had signaled.

Officer Cavitt also testified that at first she thought the driver of the Cadillac may be drunk, but then concluded the maneuver may have been to avoid a car approaching from a cross-street. According to the officers, after they started to follow closely behind the vehicle, the driver of the Cadillac had no further difficulties negotiating down the street.

However, after the officers passed the Cadillac, Officer Cavitt, watching in her rear-view mirror, noticed the vehicle swerve several feet across the double yellow centerline dividing opposing traffic on Central Avenue. There is conflicting testimony as to whether the Cadillac swerved during or immediately before a curve in the roadway. After telling Officer Molde of what she observed, Officer Cavitt decided to stop the Cadillac. She slowed her police cruiser down, allowed the Cadillac to pass by, and then turned on the cruiser's emergency lights.

Officer Cavitt testified that while the Cadillac was slowing down, she noticed that the driver appeared to reach down as though he was trying to hide or retrieve something. Additionally, after the Cadillac stopped and the officers approached the vehicle on foot, Officer Molde noticed the driver again reach down under his seat. After Officer Molde relayed this information to Officer Cavitt, Cavitt opened the driver's side door and ordered the driver, Appellant-Defendant Finney, to get out of the vehicle.

Upon opening the driver's side door, Officer Cavitt detected a strong odor of marijuana emanating from the Cadillac.  A subsequent search revealed a burnt marijuana cigarette in the ashtray, a baggie of marijuana under the driver's seat, and a loaded 9mm handgun behind a plastic liner of the glove compartment.

As a result of this traffic stop and search, Finney was charged with being a felon in possession of a firearm and ammunition—the loaded 9mm handgun found in the Cadillac's glove compartment—in violation of 18 U.S.C. § 922(g)(1).  Prior to trial, Finney moved to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional, on its face and as-applied, because the statute exceeded Congress's Commerce Clause authority.  Finney also filed a motion to suppress the evidence seized from the vehicle, arguing, among other things, that the officers lacked a reasonable suspicion to conduct the traffic stop and that the stop was pretextual.[1]

The district court denied both of Finney's motions.  First, in denying the motion to dismiss, the court concluded that Tenth Circuit precedent foreclosed Finney's Commerce Clause contentions.  Second, the court concluded the officers had a reasonable suspicion to stop Finney because they had observed (1) the Cadillac weave within its own lane of travel and (2) Officer Cavitt had then seen the vehicle cross the centerline separating opposite directions of traffic, a putative

_____

[1]  Finney implies that his "two-toned Cadillac with fancy wheels and very dark tinted windows" may have caught the eye of the SCAT officers who are trained in policing gang activity and drug crimes.  Aplt. Br. at 5.

-4-

violation of Kan. Stat. Ann. § 8-1522(a).  Rejecting Finney's contentions that the officers' testimony concerning their observations on that evening was not credible, the district court held the traffic stop was justified and denied Finney's motion to suppress.

After his motions were denied, Finney entered a conditional guilty plea to the § 922(g)(1) charge, reserving his right to appeal the issues raised in the two denied motions.  The district court sentenced Finney to time served and three years of supervised release, and Finney timely appealed.

## II.  Analysis

Finney raises two contentions of error.  First, he argues his conviction should be reversed because the district court erred in denying his motion to suppress evidence.  Second, he claims his conviction under § 922(g)(1) should be reversed because the statute is unconstitutional.  We address each of his contentions in turn.

*A.  Motion to Suppress*

Finney claims the district court erred in denying his motion to suppress, asserting that (1) Officer Cavitt's testimony at the suppression hearing was not credible, and (2) that given the sharp curve in the road and the allegedly erratic driving by the officers, he never committed any traffic infraction.  At bottom, Finney challenges the officers' justification for the traffic stop.

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). We accept the district court's factual findings unless those findings are clearly erroneous. *Id.* "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *Id.* However, we review de novo the ultimate determination of reasonableness under the Fourth Amendment. *United States v. Chavira*, 467 F.3d 1286, 1290 (10th Cir. 2006).

Our Fourth Amendment analysis of the traffic stop here turns on whether the officers had "an objectively reasonable articulable suspicion that a traffic violation ha[d] occurred or [wa]s occurring before stopping [the] automobile." *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003) (quotation omitted). Therefore our sole inquiry is whether the "particular officer[s] had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Id.* (quotation omitted). The applicable Kansas statute here, Kan. Stat. Ann. § 8-1522(a), provides that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane." *See also United States v. Cline*, 349

-6-

F.3d 1276, 1286–87 (10th Cir. 2003) (addressing same Kansas statute); *Zabalza*, 346 F.3d at 1258 (same).

First, Finney takes issue with the officers' credibility, implying their motivations—as members of the SCAT unit—were pretextual. He argues that Officer Cavitt's testimony and version of events should be discounted. Finney's contentions are without merit. When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir. 1997). The district court addressed any testimonial inconsistencies, noting that "[i]t has been over a year since this incident, and the officers have undoubtedly made a number of traffic stops in their tenure, both of which likely make it difficult to remember all the details of this particular stop." R, Vol. I, Doc. 15 at 8. The district court's findings are not clearly erroneous in light of these minor inconsistencies in the officers' testimony and the fact that Finney disagrees with their version of the events of that evening. *See Toro-Pelaez*, 107 F.3d at 824.

Additionally, the fact that the officers may have had other motivations in stopping Finney is irrelevant. *See Cline*, 349 F.3d at 1287; *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir. 2003) ("The fact that the troopers had other motivations for stopping . . . [the defendant] has no bearing upon this review. 'Subjective intentions play no role in ordinary, probable-cause Fourth

Amendment analysis.'" (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996))).

Second, Finney contends that even if he did violate section 8-1522(a) by momentarily crossing the centerline of the roadway, that single violation is insufficient to raise a reasonable suspicion to perform a traffic stop. Citing the "nearly as practicable" language of the statute, Finney claims the presence of the officers' police cruiser and the sharp curve were contributing factors to his one-time crossing of the yellow centerline. Notwithstanding Finney's contentions, we agree with the district court and find the officers had an objectively reasonable articulable suspicion that Finney had violated section 8-1522(a) and the traffic stop was therefore proper.

We have previously found that an isolated incident of a vehicle crossing into an emergency lane was not a violation of a state traffic law which requires the operator to keep the vehicle "as nearly as practical entirely within a single lane." *United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (addressing a Utah law with similar language to the Kansas statute here). In *Gregory*, we determined that a driver, faced with a winding road and windy conditions, may momentarily move out of his lane without giving rise to a suspicion of criminal activity. *Id. Gregory*, however, does not create a "bright-line rule" of what conduct constitutes a violation of this type of statute, but rather "highlight[s] the need to analyze objectively *all the surrounding facts and circumstances*" to

-8-

determine whether the officer had a reasonable suspicion to make the stop. *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) (emphasis added).

We have also previously addressed the Kansas statute at issue here, rejecting a similar argument that a single instance of going over the fog line can never be a violation of the Kansas statute. *Cline*, 349 F.3d at 1287. "Rather, the particular facts and circumstances of each case determine the result."[2] *Id.*

Here, the district court credited the officers' testimony that there were no external factors, save the curve in the road, to account for the Cadillac's swerve over the centerline dividing opposing traffic on Central Avenue. According to the district court, nothing in the road conditions would suggest any reason why "a driver exercising ordinary care would have been unable to keep his vehicle out of the lane for oncoming traffic." R., Vol. I, Doc. 15 at 9. Additionally, the district court noted that shortly before this alleged violation, the officers had seen the Cadillac driving at a high rate of speed, weave within its own lane, and then momentarily change lanes (with or without signaling). Finally, the district court discounted Finney's contention that Officer Cavitt's driving contributed to any violation—the police cruiser was well past the Cadillac by the time the alleged

---

[2] Addressing the same statute, the Kansas Court of Appeals recently noted, "in articulating reasonable suspicion that a [violation] has occurred in order to justify the traffic stop, the totality of the circumstances must make it appear to the officer that not only did the defendant's vehicle move from its lane of travel, *but it left its lane when it was not safe to do so.*" *State v. Ross*, 149 P.3d 876, 879 (2007) (emphasis added).

violation had occurred. Considering all of these surrounding facts and circumstances—including that crossing the centerline on a two-way street is almost never safe—the district court did not err in concluding the officers had a reasonable suspicion that the driver of the Cadillac had violated Kansas law. *See Cline*, 349 F.3d at 1287 (finding one-time swerve onto the shoulder of the road could give rise to an articulable suspicion of a section 8-1522(a) violation); *Zabalza*, 346 F.3d at 1258 (finding a stop reasonable after a vehicle crossed the center line twice); *Ozbirn*, 189 F.3d at 1198–99 (finding probable cause to stop a vehicle for crossing the fog line twice where weather, road conditions, and officer conduct would not have contributed to such an action); *see also United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2005) ("Under the particular facts and circumstances of this case, where there is an utter absence of any weather conditions, road features, or other circumstances that could have interfered with [the driver's] ability to keep his vehicle in a single lane," the officer "had a reasonable articulable suspicion that [the driver], by crossing one foot over the fog line, had violated" a statute similar to section 8-1522(a)).

In sum, we find the traffic stop was reasonable under the Fourth Amendment.

   *B. Commerce Clause Challenge to 18 U.S.C. § 922(g)(1)*

Finney also argues he was convicted under a statute that exceeds Congress's power under the Commerce Clause. In his motion to dismiss the

indictment, Finney raised a challenge to the constitutionality of § 922(g)(1), acknowledged that our precedent forecloses his contentions, and stated that he was merely preserving this issue "for further review by the United States Supreme Court." R., Vol. I, Doc. 8 at 1. Nevertheless, Finney urges us to find § 922(g)(1) exceeds Congress's Commerce Clause powers because the statute criminalizes firearms possession based merely on the fact the firearm crossed state borders at some time prior to his possession. We disagree and note that we have rejected this contention on numerous prior occasions.

In particular, several prior panels of this court have upheld § 922(g)(1) against similar Commerce Clause challenges.[3] *See, e.g.*, *United States v. Dorris*, 236 F.3d 582 (10th Cir. 2000); *United States v. Farnsworth*, 92 F.3d 1001 (10th Cir. 1996); *United States v. Bolton*, 68 F.3d 396 (10th Cir. 1995). We are bound by these precedents. *E.g.*, *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1333 (10th Cir. 2003) ("One panel of the court cannot overrule circuit precedent." (quotation omitted)).

Finney argues that we should revisit these cases in light of the Supreme Court decision in *United States v. Lopez*, 514 U.S. 549 (1995), and subsequent Commerce Clause cases such as *Gonzales v. Raich*, 545 U.S. 1 (2005), and *United States v. Morrison*, 529 U.S. 598 (2000). He contends the Supreme Court's

---

[3] These cases rely on *Scarborough v. United States*, 431 U.S. 563 (1977), which upheld the predecessor statute to § 922 against a Commerce Clause challenge.

*Scarborough* decision is irreconcilable with the analytical framework established in these recent cases considering the scope of Congress's Commerce Clause authority.

We recently rejected the identical arguments Finney proffers here. *See United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006) ("The constitutional understanding implicit in *Scarborough* [is] that Congress may regulate any firearm that has ever traversed state lines."). In *Patton*, although we noted *Scarborough* is in tension with the more recent Supreme Court Commerce Clause jurisprudence, we concluded that we remain bound by *Scarborough*. *Id.* at 636 ("Any doctrinal inconsistency between *Scarborough* and the Supreme Court's more recent decisions is not for this Court to remedy."). As we have stated before, "[u]nless and until the Supreme Court determines otherwise, we will continue to follow applicable precedent." *United States v. Holyfield*, 481 F.3d 1260, 1262 (10th Cir. 2007) (quotation omitted).

In the alternative, Finney asks this court to apply the "constitutional doubt" doctrine to § 922(g)(1). *See Jones v. United States*, 529 U.S. 848, 857 (2000) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." (quotation omitted)). Finney contends we should apply this doctrine "to require a greater 'nexus' to, or 'effect' on, interstate commerce than the mere fact the firearm was manufactured outside

-12-

of the state of possession in order to sustain a conviction under 18 U.S.C. § 922(g)." Aplt. Br. at 29.

Finney, however, misapprehends the doctrine of constitutional doubt, which

> does not trump the principle of *stare decisis*. If a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the Court the prerogative of overruling its own decisions.

*United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007) (en banc) (brackets omitted) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)); *see United States v. Gordon*, 272 F. App'x 674, 675 (10th Cir. 2008) (quoting and adopting *Grisel*'s conclusion); *United States v. Lee-Clark*, 258 F. App'x 208, 212 (10th Cir. 2007) (same); *United States v. McNeill*, 239 F. App'x 449, 450–51 (10th Cir. 2007) (same). Because Supreme Court and Tenth Circuit precedent directly upholds the construction of § 922(g)(1) requiring no more than the minimal nexus that the firearm was—at some point—in interstate commerce, Finney's "constitutional doubt" argument is meritless as well.

### III. Conclusion

For the foregoing reasons, we AFFIRM Finney's conviction.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-13-