NOT DESIGNATED FOR PUBLICATION

No. 120,545

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF MANHATTAN,
*Appellee*,

v.

JOEL W. LAUB,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed October 25, 2019.
Affirmed.

*John W. Thurston*, of Addair Thurston, Chtd., of Manhattan, for appellant.

*Mellissa K. Rundus*, city prosecutor, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM:  Following a trial on stipulated facts, the trial court found Joel W. Laub guilty of driving under the influence (DUI). He appeals the trial court's earlier denial of his motion to suppress, arguing that the police officer lacked reasonable suspicion to stop him. Because the police officer had reasonable suspicion to conduct a traffic stop, we affirm the trial court's denial of his motion to suppress.

1

On April 1, 2018, around 1 a.m., Officer Brian Dow saw Laub drive over a street curb while making a right turn. Officer Laub conducted a stop and later arrested Laub for DUI. Laub's blood alcohol content was 0.210.

The City of Manhattan charged Laub with DUI in violation of the City's Standard Traffic Ordinance 6-30(a)(2), (3), (5). Laub initially contested his charge in municipal court. But he changed his plea to no contest, and the municipal court judge found him guilty of DUI. Laub appealed to the Riley County District Court.

Before the trial court, Laub moved to suppress evidence that he was DUI. Laub's motion focused solely on the legality of the traffic stop. Laub argued that Officer Dow lacked reasonable suspicion to stop him for being DUI because he ran over a street curb.

The trial court held a hearing on Laub's motion. Officer Dow testified and explained that from the opposite lane, he saw Laub's "right rear tire [go] up and over the curb and then back down onto the roadway as [Laub] was making a right turn." He further explained that Laub "drove at least 2 feet onto the curb," meaning that "there was at least 2 feet of curb between his tire and the roadway." Officer Dow explained that Laub drove over the curb in the "Aggieville area" next to a crosswalk. He testified that the reason he conducted the traffic stop was because Laub went "up and over the curb." He then testified that "[b]ased on [his] training and experience" he knew Laub committed a traffic violation.

When asked what specific traffic violation he believed Laub had violated, Officer Dow explained he did not have a single violation in mind because he believed Laub had violated several traffic rules under the City's Standard Traffic Ordinances (STOs), including an improper right turn under STO 49(a)(1) and improper driving on a laned roadway under STO 46(a). Officer Dow also testified that he did not issue a traffic ticket to Laub because of police department policy: "When we make an arrest, we're not

2

allowed to issue an [notice to appear]." He explained that instead, the department refers the case to the City prosecutor, who determines whether to charge the traffic violation along with the DUI as a single case.

Following Officer Dow's testimony, the parties presented their arguments to the court. Laub argued (1) that he did not commit a traffic violation, and (2) that Officer Dow needed more than the observation that he drove over the curb to have reasonable suspicion to conduct the stop. Laub asserted that his arguments were supported by appellate caselaw. The City responded that Officer Dow had reasonable suspicion to make the traffic stop because by driving over the street curb, Laub committed several traffic violations contrary to STOs.

The trial court rejected Laub's argument. The trial court found that Laub committed a traffic violation when he moved his truck "approximately 2 feet over a curb." The trial court explained that being "over the curb" established that "there was movement outside the regular lane." The trial court further found the following:

> "The officer[] cited, while under oath, the belief that after observing the facts that [the facts] could apply to any number of different traffic violations [] ordinances in the jurisdiction. That would seem to be a reasonable conclusion whether that's limited to the lane violation that the defense has cited or emphasized . . . or otherwise. But, the Court finds that the weight given to today's testimony and the reasons offered by the officer and articulated do constitute a reasonable suspicion. And based upon those objective facts that he had a basis to make the stop believing that an offense had either been committed, was being committed . . . . For those reasons the defendant's motion is denied."

Next, Laub's case proceeded to trial before the court on stipulated facts, including the fact that Officer Dow "observed the pick-up's right rear tire drive over the curb." The trial court found Laub guilty of DUI under the stipulated facts. It sentenced Laub to 90 days in jail, suspended to a sentence of 12 months' probation after serving 2 days in jail.

3

Laub timely appealed to this court.

*Did Reasonable Suspicion Exist to Conduct the Traffic Stop?*

When considering whether reasonable suspicion exists, appellate courts review the trial court's factual findings for substantial competent evidence and legal conclusions de novo. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007). Moreover, appellate courts apply the same standard of review when considering whether the trial court erred by denying a defendant's motion to suppress. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The law on reasonable suspicion is well established. A police officer may stop and briefly detain a person without a warrant when the officer has a reasonable and articulable suspicion, based in fact, that the detained person is committing a crime, has committed a crime, or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). K.S.A. 22-2402(1) also provides: "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

Concerning traffic stops, our Supreme Court has explained the following:

> "A traffic stop is a seizure under the purview of the Fourth Amendment. Thus, in order to stop a vehicle, 'an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402(1) and *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *A traffic violation provides an objectively valid reason to effectuate a*

4

*traffic stop, even if the stop is pretextual*.' [Citations omitted.]" (Emphasis added.) *Moore*, 283 Kan. 349-50.

On appeal, Laub's sole argument is whether Officer Dow had reasonable suspicion to stop him when he drove "at least 2 feet onto the curb." Indeed, Laub does not dispute that he drove over the street curb when making a right turn. Instead, Laub's entire argument hinges on his contention that Officer Dow lacked reasonable suspicion to stop him because in the following cases, our Supreme Court and this court have held that a lane violation did not provide law enforcement officers with reasonable suspicion to believe the drivers were DUI: *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015); *State v. Ross*, 37 Kan. App. 2d 126, 149 P.3d 876 (2007); *State v. Hess*, 37 Kan. App. 2d 188, 153 P.3d 557 (2006); and *State v. Steadman*, No. 114,326, 2016 WL 5867482 (Kan. App. 2016) (unpublished opinion), *rev. denied* June 20, 2017. Laub argues, "If running over the curb were a violation in and of itself [this court] would have simply ruled as such and upheld the stop for that violation alone. Instead [this court] went on to analyze whether there was reasonable suspicion of a DUI under the totality of circumstances." Nevertheless, as the State argues in its brief, the *Molitor*, *Ross*, *Hess*, and *Steadman* cases are distinguishable from Laub's case.

To begin with, Laub ignores that the trial courts in the *Molitor*, *Hess*, and *Steadman* cases did not consider whether a traffic violation provided the law enforcement officers with reasonable suspicion to make the traffic stop. In *Molitor*, for example, the trial court considered whether the law enforcement officer had reasonable suspicion to ask Molitor to submit to a PBT. Molitor never challenged his turn signal infraction. 301 Kan. at 253-54. In *Steadman*, the law enforcement officer did not pull Steadman over for a traffic violation. Instead, the officer pulled Steadman over because the officer believed that Steadman's erratic driving established that Steadman was DUI. This resulted in Steadman challenging whether his allegedly erratic driving provided the officer with reasonable suspicion that he was DUI. 2016 WL 5867482, at *3.

5

Moreover, in *Hess*, even though the law enforcement officer cited Hess for a traffic violation, the trial court ruled that the officer had reasonable suspicion to believe Hess was DUI based on the way he was driving before the stop. When Hess challenged whether he had committed a traffic violation on appeal, this court refused to consider his argument:

"Hess devotes a part of his argument to contending that the district court erred in finding that the Camaro's touching of the lane divider lines constituted the traffic infraction of failing to maintain a single lane. However, we do not perceive that the district court made that finding. The district court's statements suggest that it upheld the stop based upon the officer's reasonable suspicion that the Camaro's driver was impaired, rather than upon the commission of a traffic infraction. Therefore, the question presented is whether the deputy had a reasonable suspicion from the totality of the circumstances that Hess was driving while impaired." 37 Kan. App. 2d at 192.

Here, however, Officer Dow testified that he stopped Laub because of a traffic violation. More importantly, the trial court found that Officer Dow had reasonable suspicion to make the traffic stop because he observed Laub commit a traffic violation by driving at least two feet over the street curb. Accordingly, Laub's case is distinguishable from the *Molitor*, *Hess*, and *Steadman* cases as none of those cases hinged on whether the law enforcement officer had reasonable suspicion to make a stop based on a traffic violation. Simply put, Laub conflates cases involving reasonable suspicion for PBT or DUI with his reasonable suspicion for a traffic violation case. His case and the cases involving the existence of reasonable suspicion for a PBT and DUI require different tests because they involve different facts.

Next, it is important to note that in his brief, Laub never recognizes that the test for reasonable suspicion changes depending on the type of seizure the law enforcement officer made. The only case Laub cites involving whether an officer had reasonable

6

suspicion to support a stop based on a traffic violation is *Ross*. Yet, even when relying on *Ross*, Laub never argues that Officer Dow lacked reasonable suspicion to make the stop because despite running over the street curb, he was otherwise driving in a safe manner. Instead, he argues that the *Ross* court held that "a single curb or fog-line touch will not constitute reasonable suspicion alone to justify a stop." Stated another way, he contends that driving "at least 2 feet onto the curb" does not constitute a traffic violation. In making his argument, Laub also seems to assert that law enforcement officers who stop drivers based on a lane violation must already suspect that the drivers are DUI before making the stop.

Nevertheless, Laub, through his attorney, clarified his position during oral argument. His attorney explained that he was not citing *Ross*, *Molitor*, *Hess*, and *Steadman* for the purpose of arguing that Officer Dow lacked reasonable suspicion to believe that Laub was driving while intoxicated. To the contrary, he cited those cases because they involved a traffic stop and they were, especially the *Ross* traffic stop, factually similar to this case. Based on this clarification, we will focus our opinion on whether Officer Dow had reasonable suspicion to make a traffic stop of Laub's vehicle after he drove his truck "at least 2 feet onto the curb."

In *Ross*, Ross crossed the fog line once at the right edge. A law enforcement officer pulled Ross over for violating K.S.A. 8-1522(a), which states "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." During the stop, the officer discovered cocaine on Ross' person. Ross unsuccessfully moved to dismiss his possession of cocaine charges. On appeal, Ross argued that his conduct of crossing the fog line did not violate K.S.A. 8-1522(a), meaning the officer lacked reasonable suspicion to make the traffic stop.

7

This court agreed with Ross because the plain language of K.S.A. 8-1522(a) states that drivers must stay within their lanes "'as nearly as practicable,'" which "connote[d] something less than the absolute." 37 Kan. App. 2d at 129. The *Ross* court explained that drivers may safely change lanes and move to the shoulder of the road; thus, maintenance of a single lane is not always required. 37 Kan. App. 2d at 129-30. The *Ross* court then held that to violate K.S.A. 8-1522(a), the State needed to provide evidence that Ross moved from his regular lane of travel in an unsafe manner. For that reason, the *Ross* court held that the officer lacked reasonable suspicion to stop Ross when Ross crossed the fog line just once without any other safety concerns. 37 Kan. App. 2d at 130-31.

Nevertheless, the *Ross* court held that if drivers move from their regular lane of travel in an unsafe manner, drivers may violate K.S.A. 8-1522(a) even though the drivers moved from their regular lane of travel just once. 37 Kan. App. 2d at 130-31. Laub, however, argues that the *Ross* decision stands for the proposition that "a single curb or fog-line touch will not constitute reasonable suspicion alone to justify a stop." Thus, Laub's argument hinges on his belief that the *Ross* court held that driving onto a street curb or fog line could not be a traffic violation.

Yet, even if we assumed that Laub had argued that Officer Dow lacked reasonable suspicion to make the traffic stop because he was otherwise driving safely, Laub's challenge would fail. The facts of Laub's case are unlike the facts of the *Ross* case. First, the law enforcement officer in *Ross* stated he had reasonable suspicion because of a lane violation. In this case, however, Officer Dow testified that he believed Laub had violated the improper right turn ordinance—STO 49(a)(1)—and the improper driving on a laned roadway ordinance—STO 46(a). The trial court agreed that Laub had violated those ordinances.

STO 49(a)(1), the ordinance on right turns, states "[t]he driver of a vehicle intending to turn [right] shall do so as follows: . . . Both the approach for a right turn and

8

a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." Meanwhile, STO 46(a) mirrors K.S.A. 8-1522(a), which was the statute addressed in *Ross*: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Thus, under the plain language of STO 49(a)(1) and STO 46(a), it is readily apparent that drivers should maintain their lanes while driving. The *Ross* case teaches us that drivers have some leeway when driving as "nearly as practicable to the right-hand curb or edge" or "nearly as practicable entirely within a single lane." Nevertheless, the *Ross* case also teaches us that drivers who move outside their regular lane of travel when it is unsafe to do so violate a traffic offense. 37 Kan. App. 2d at 130-31. "A traffic violation provides an objectively valid reason to effectuate a traffic stop, *i.e.*, articulable facts sufficient to constitute reasonable suspicion." *State v. Morlock*, 289 Kan. 980, Syl. ¶ 2, 218 P.3d 801 (2009). Consequently, so long as going "at least 2 feet onto the curb" constituted a traffic infraction under the preceding restrictions, Officer Dow had reasonable suspicion to stop Laub.

Here, Laub's act of driving over the street curb was a more dangerous act than Ross' act of driving over the right edge of the fog line. Again, Officer Dow testified that Laub's back right tire went "over the curb and then back down onto the roadway." He also testified that Laub "drove at least 2 feet onto the curb," meaning that "there was at least 2 feet of curb between his [back right] tire and the roadway." The City's STOs do not define curb. Neither does Kansas' Uniform Act Regulating Traffic, from which many of the STOs borrow language. The online Merriam Webster's Dictionary, however, defines curb as follows: "an edging (as of concrete) built along a street to form part of a gutter."

Therefore, the street curb is the edging on the street. It creates a buffer between the street and all that is not the street. This means when Officer Dow testified that Laub's back right tire went "over the curb and then back onto the roadway" and "at least 2 feet onto the curb," he meant that Laub's *tire left the roadway*. His tire was on a space not designated as the street. Indeed, the trial court made factual findings that Laub's offense involved more than a "curb check" and that Laub's tire went "over the curb." Furthermore, Ross drove onto the fog line on the highway; Laub, however, drove over the street curb in the Aggieville area around 1 a.m. on a Sunday next to a crosswalk. The City undoubtedly placed the crosswalk at that location because many pedestrians cross the street at that location. By driving over the street curb by at least two feet, Laub would have endangered any pedestrians who were waiting to enter the crosswalk. Even though the record does not indicate that there were any pedestrians near the crosswalk when Laub drove over the street curb, his actions of driving over the street curb were no less unsafe and dangerous.

As a result, Laub's case is distinguishable from the *Ross* case because Laub's offense involved driving over the street curb by at least two feet, occurring in a popular area, and occurring next to an area designated as a crosswalk. Given the preceding facts, when the right rear tire of Laub's truck left the roadway, he was driving in an unsafe manner. Because Laub drove over the street curb in an unsafe manner, Officer Dow had reasonable suspicion to make the traffic stop. Accordingly, even if we were to assume Laub argued that Officer Dow lacked reasonable suspicion to make the traffic stop because he was driving safely, the trial court correctly ruled that Officer Dow had reasonable suspicion to believe that Laub committed a traffic violation—either STO 49(a)(1) or STO 46(a)—when it denied Laub's motion to suppress.

Affirmed.