NOT DESIGNATED FOR PUBLICATION

No. 122,448

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERNEST EUGENE SIMS III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed June 11, 2021. Affirmed.

*Andrea Swisher*, of Swisher Law Office, LLC, of Salina, for appellant.

*Alex C. Driskell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM: After a bench trial, the district court convicted Ernest Eugene Sims III of driving while his driver's license was suspended or revoked. He appeals, arguing law enforcement did not have reasonable suspicion to conduct the traffic stop and thus the subsequent discovery of his driver's license status should have been excluded as fruit of the poisonous tree. We reject Sims' claim and affirm the district court's judgment.

1

On November 11, 2016, Kansas Highway Patrol Trooper Derric Thompson received a call from an off-duty trooper about an "erratic driver." Thompson went to the area the trooper reported and saw Sims "weaving, drifting, and having problems maintaining proper lane position." Thompson observed Sims "drift on the white line . . . several times" so he conducted a traffic stop. Thompson requested and obtained Sims' identification card and checked the status of Sims' driver's license with dispatch. Dispatch told Thompson that Sims' driver's license was revoked. Thompson arrested Sims for driving while revoked and gave Sims a warning for failing to maintain lane.

The State charged Sims with driving while his driver's license was canceled, suspended, or revoked; second or subsequent conviction. The record shows the issuance of several bench warrants for Sims' failure to appear, but the record does not reflect that Sims filed any motion to suppress the evidence before the trial.

The district court held a bench trial on April 3, 2019. The State's evidence to prove the charge was brief. The State admitted, without objection, Sims' prior convictions for driving while suspended and a copy of Sims' driving record which conveyed that on November 11, 2016, his license was revoked. Thompson testified briefly about pulling Sims over after Sims touched the fog line at least twice.

After the State rested, Sims moved for "dismissal," arguing there was not sufficient evidence of Sims touching the fog line to give Thompson "probable cause" to pull Sims over. Sims asserted there was not "enough reason to conduct a traffic stop in the first place." The district court noted that Sims had not filed a pretrial motion to suppress the evidence based on the traffic stop. Still, the district court briefly addressed the merits of Sims' argument and found that Thompson saw Sims touch the fog line and that he had "a reasonable basis and probable cause to make the traffic stop."

Sims then testified on his own behalf and stated that he did not recall crossing or touching the line. Sims made no attempt to dispute the State's evidence that his driver's license was revoked on November 11, 2016. During closing argument, Sims again asserted that Thompson did not have a reasonable basis to make the stop and so the State failed to prove its case "beyond a reasonable doubt."

The district court found the evidence showed that Sims "touched the fog line at least two times" and that there was no evidence to dispute the State's claim that Sims was driving on a revoked license. Thus, the district court found Sims guilty of driving while suspended or revoked and found it was his second or subsequent conviction. The district court sentenced Sims to 30 days in jail but suspended the sentence and placed Sims on unsupervised probation for 90 days. Sims timely appealed the district court's judgment, and the district court stayed Sims' sentence pending his appeal.

ANALYSIS

On appeal, Sims argues that Thompson did not have a reasonable suspicion to conduct the traffic stop because no evidence showed that Sims' crossing the fog line created a safety risk, which Sims argues is needed to establish a violation of failure to maintain lane. Sims argues that because Thompson did not have reasonable suspicion, the traffic stop constituted an impermissible seizure and thus the discovery of his driver's license status should have been excluded as fruit of the poisonous tree.

The State argues that Sims failed to raise his suppression issue before the trial court and has abandoned his right to argue the issue for the first time on appeal. The State also argues there was a reasonable suspicion for the traffic stop and the evidence of Sims driving on a revoked license should not be excluded.

3

The fundamental problem with Sims' case is that he treated the bench trial as if it were a hearing on a motion to suppress the evidence even though Sims never filed a pretrial motion to suppress. Sims was not charged with failure to maintain a single lane of traffic; he was only charged with driving on a suspended or revoked license. At the bench trial, the only evidence the State needed to present to prove the charge was that (1) Sims was driving a vehicle on November 11, 2016, and (2) his driver's license was suspended or revoked on that date. The State presented this evidence without objection from Sims. Then, after the State rested its case, Sims argued for the first time that the evidence should be excluded because Thompson did not properly stop his vehicle.

Under K.S.A. 22-3216, a motion to suppress illegally seized evidence shall be made before trial and in writing, stating facts showing that the search and seizure was unlawful. Sims should have filed such a motion if he wanted to suppress the evidence in his case, but he never did so. But K.S.A. 22-3216(3) states that "the court in its discretion may entertain the motion at the trial." It appears the district court entertained Sims' motion to suppress at the bench trial because the court addressed the motion on its merits and found that Thompson had reasonable grounds to make the stop because Sims' vehicle touched the fog line at least twice. So even though the district court record is poorly developed to address Sims' suppression issue, we find the issue is sufficiently preserved for appeal.

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Also, whether reasonable suspicion exists is a question of law, and appellate courts review this question with a mixed standard of review, determining whether substantial competent evidence supports the district court's factual findings,

4

while the legal conclusion is reviewed de novo. *City of Wichita v. Molitor*, 301 Kan. 251, 264-65, 341 P.3d 1275 (2015).

The Fourth Amendment to the United States Constitution protects people from unlawful seizure, and a traffic stop constitutes a seizure of the driver. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). To comply with the Fourth Amendment, law enforcement must "'have a reasonable and articulable suspicion, based on fact, that the person has committed, is committing, or is about to commit a crime.'" 305 Kan. at 1081; see K.S.A. 22-2402(1). Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2108). Reasonable suspicion is a lower standard than probable cause and requires the court to examine the totality of the circumstances from the view of a trained law enforcement officer. *Sharp*, 305 Kan. at 1081.

Sims argues that Thompson did not have a reasonable suspicion to conduct the traffic stop based on the statute for failure to maintain a single lane, which reads: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." K.S.A. 2020 Supp. 8-1522(a). On appeal, Sims does not argue that his vehicle did not touch the fog line. Instead, he argues that even if he touched the fog line, the State had to prove that his touching the fog line created a safety risk. He cites *State v. Ross*, 37 Kan. App. 2d 126, 149 P.3d 876 (2007), as being "dispositive." In that case, the officer stopped the defendant's vehicle for crossing the fog line. On appeal, the defendant challenged the reasonable suspicion for the stop arguing that his driving did not violate the statute because no evidence showed that his failure to stay in the lane of traffic caused a safety risk. The panel agreed, finding that

> "in articulating reasonable suspicion that a traffic offense has occurred in order to justify
> the traffic stop, the totality of the circumstances must make it appear to the officer that

5

not only did the defendant's vehicle move from its lane of travel, but it left its lane when it was not safe to do so." 37 Kan. App. 2d at 130.

Two years after *Ross*, the Kansas Supreme Court issued *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009), addressing a similar argument. Marx, while driving a motor home, crossed the fog line then overcorrected and crossed the center line, thus a deputy pulled him over. Marx moved to suppress and argued that the officer did not have a reasonable suspicion to stop him for violating K.S.A. 8-1522(a). The district court agreed and granted the motion. On appeal, our Supreme Court ultimately affirmed the district court's judgment, but it interpreted the failure to maintain a single lane statute contrary to the *Ross* panel:

> "[W]e interpret K.S.A. 8-1522(a) as establishing two separate rules of the road. The first requires a driver to keep entirely within a single lane while traveling on a roadway with two or more clearly marked lanes. That rule is temporarily suspended when it becomes impracticable to stay within the lane markers and when the driver is properly effecting a lane change. *Proof that driving outside the lane markers created no safety hazard is not a defense to the single lane rule.* The second rule provides that before a driver may change lanes or move from the current lane of travel to another location, he or she must ascertain that the movement can be made with safety. A traffic infraction occurs under K.S.A. 8-1522(a) when either rule of the road is violated." (Emphasis added.) 289 Kan. at 673.

Thus, contrary to Sims' assertion, *Ross* is not dispositive as our Supreme Court has interpreted K.S.A. 8-1522(a) differently than the *Ross* panel interpreted the statute. The *Marx* court explicitly stated that "[p]roof that driving outside the lane markers created no safety hazard is not a defense to the single lane rule." 289 Kan. at 673. As a result, the State did not have to prove that Sims' crossing the fog line created a safety risk to show that Thompson had a reasonable suspicion to make the traffic stop. As this is the only argument Sims makes on appeal as for why the district court should have suppressed the evidence, we find that Sims has no right to relief on his claim.

We observe that the *Marx* court also found that "a violation of K.S.A. 8-1522(a) requires more than an incidental and minimal lane breach" and held that the State failed to present evidence to carry its burden that the officer had a reasonable suspicion to pull Marx over. 289 Kan. at 674. But on appeal, Sims makes no argument about the extent of his lane breach, i.e., how many times did his car cross the fog line and by how much. Thus, we consider any such argument as waived or abandoned. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (holding that issues not adequately briefed are considered waived or abandoned). Moreover, it would be unfair to hold the State to the *Marx* standard as to the extent of the lane breach because Sims did not raise any issue on this subject until after the State had presented its evidence at trial. Based on the narrow argument Sims makes on appeal, we conclude the district court did not err in failing to exclude the evidence of his driver's license status at trial.

Affirmed.