NOT DESIGNATED FOR PUBLICATION

No. 126,805

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RODNEY MORROW,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Osage District Court; ERIC W. GODDERZ, judge. Submitted without oral argument. Opinion filed November 15, 2024. Affirmed.

*Michael A. Millett*, of Law Office of Michael A. Millett, P.A., of Overland Park, for appellant.

*Donald J. Cooper*, Kansas Department of Revenue, for appellee.

Before PICKERING, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Rodney Morrow appeals the suspension of his driver's license. He argues that the sheriff's deputy who stopped his vehicle did not have reasonable suspicion to do so. Because the district court correctly found that the deputy's testimony provided specific, articulable facts which demonstrated that, under the totality of the circumstances, the deputy reasonably suspected that Morrow was committing a crime, we affirm its suspension of Morrow's driving privileges.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of September 30, 2021, Osage County Sheriff's Deputy Ethan Wells was on routine patrol along a rural two-lane road when he noticed the pickup truck in front of him weaving within its lane and drift onto the shoulder. The driver of the truck then activated his turn signal, despite the fact the nearest intersection was still over 700 feet off in the distance.

The combination of observed behaviors triggered Deputy Wells' suspicion that the driver may be impaired. Before he could activate his emergency lights, however, the driver finally executed his turn, but in a manner that Deputy Wells perceived to be impermissibly wide. Specifically, the deputy saw the truck's driver's side tires cross over the double centerline, which constituted a traffic violation. Wells effectuated the stop and identified the driver of the pickup as Rodney Morrow. The stop ultimately resulted in Morrow's arrest for driving under the influence.

Deputy Wells completed an "Officer's Certification and Notice of Suspension," or DC-27 form, to document the stop. The only basis for the stop that he detailed in writing was that Morrow swerved within his lane. He also outlined multiple factors as support for his suspicion that Morrow was driving under the influence.

The Kansas Department of Revenue (KDOR) suspended Morrow's driving privileges, and Morrow petitioned the district court for review of that administrative decision. The district court held an appeal hearing and found that, based on the totality of the circumstances, including Morrow's weaving, the fact he drifted onto the shoulder, and his wide turn, Deputy Wells had reasonable suspicion of "impaired driving and traffic infractions" to stop Morrow.

2

Morrow timely brings this matter before our court and requests that we analyze whether the district court erred when it found that the totality of the circumstances supported the conclusion that the stop of his vehicle was the product of reasonable suspicion that Morrow was driving while impaired.

LEGAL ANALYSIS

*Deputy Wells had reasonable suspicion to stop Morrow's vehicle.*

The sole issue we are tasked with resolving is whether the district court erred in finding that Deputy Wells had reasonable suspicion to initiate the traffic stop of Morrow. The parties agree on the relevant facts but disagree whether those facts provided the deputy with an objective and particularized basis for stopping Morrow.

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. K.S.A. 8-259(a); *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019). Morrow, as the party asserting error, bears the burden of showing that KDOR's suspension of his driver's license was invalid. See K.S.A. 77-621(a)(1).

*Standard of Review*

This court reviews the district court's factual findings in upholding KDOR's suspension of Morrow's license for substantial competent evidence but reviews its legal conclusions de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019). Substantial competent evidence is that which is both relevant and substantive, providing a substantial basis of fact from which the issues can reasonably be resolved. In reviewing the district court's factual findings, we will not reweigh evidence, pass on the credibility of witnesses, or redetermine questions of fact. 310 Kan. at 469.

3

The Fourth Amendment to the United States Constitution protects persons from unreasonable government seizures and provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. " U.S. Const. amend. IV. The Kansas Constitution Bill of Rights likewise prohibits unreasonable searches and seizures. Kan. Const. Bill of Rights, § 15. "[A] traffic stop, even one leading to administrative rather than criminal proceedings, is a seizure" under the Fourth Amendment and section 15. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 171, 473 P.3d 869 (2020); see *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 (2018) ("A routine traffic stop is a seizure under the Fourth Amendment."). "Observation of a traffic violation, even if it is a mere pretext, provides an officer with the requisite reasonable suspicion and is an objectively valid reason to initiate a stop." *Strickert v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 1, 7, 462 P.3d 649 (2020).

An officer's decision to effectuate the stop of a driver will constitute a valid seizure under the Fourth Amendment when the officer has "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Cash*, 313 Kan. 121, Syl. ¶ 2, 483 P.3d 1047 (2021). When an officer lacks those specific, articulable facts, the seizure may violate the Fourth Amendment, assuming no exception applies. In such cases, if the traffic stop is unconstitutional, the court may set aside KDOR's administrative suspension of a person's driver's license. See *Jarvis*, 312 Kan. at 167-69.

Morrow claims that Deputy Wells lacked the reasonable suspicion necessary to initiate the traffic stop. He individually scrutinizes each behavior that the deputy observed and contends it does not give rise to reasonable suspicion to believe a crime had been committed to effectuate a traffic stop.

First, he argues that swerving in his lane, or even leaving it, does not provide sufficient justification to effectuate a stop of his vehicle and cites this court's discussion in *State v. Ross*, 37 Kan. App. 2d 126, 129-31, 149 P.3d 876 (2007), as support for his contention. The *Ross* court noted that automobiles do not run on rails like locomotives but are often required to circumvent potholes and other obstacles within their lane. 37 Kan. App. 2d at 129-30; see *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009) ("[A] violation of K.S.A. 8-1522(a) requires more than an incidental and minimal lane breach."). The State responds that our Supreme Court has held that "the repeated weaving of a vehicle within its own lane may constitute sufficient reasonable suspicion for an officer to stop and investigate the driver of the vehicle" for possible impairment. *State v. Field*, 252 Kan. 657, 664, 847 P.2d 1280 (1993).

The district court did not find that Deputy Wells lawfully pulled Morrow over solely for swerving within his lane. Nor did it determine that the deputy properly stopped him simply for drifting onto the gravel shoulder. It did not conclude that either action, standing alone, would give rise to the reasonable suspicion required to effectuate a traffic stop. Rather, it determined that Wells' cumulative observations, which included Morrow swerving in and drifting out of his lane, provided reasonable suspicion that Wells was driving while impaired. Thus, Morrow's challenge to each of Wells' observations individually has no bearing on the district court's conclusion that the combination of driving behaviors gave rise to reasonable suspicion of impairment.

Morrow also challenges Deputy Wells' observation concerning his turn signal. K.S.A. 8-1548 provides that a motorist must signal "not less than the last one hundred (100) feet traveled by the vehicle before turning." K.S.A. 8-1548(b). Thus, it addresses a minimum distance but is silent as to a maximum. We acknowledge that Morrow's actions did not constitute a traffic infraction and that his signal was only activated for 17 seconds prior to the turn, but again, we are to view the incident in its entirety. For purposes of determining whether reasonable suspicion of criminal activity exists to support a stop, we

5

must consider the entire picture. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Morrow's early turn signal was but one factor in Deputy Wells' calculus for potential impairment when observing Morrow and deciding whether to execute a stop.

Finally, Morrow directs our attention to the DC-27 form Deputy Wells completed and highlights the fact that he only specifically identified Morrow's lane weaving as the reason for the traffic stop. Morrow intimates that by presenting the full panoply of factors at the suspension hearing and to the district court on appeal, KDOR essentially supplemented the foundation for the stop, which it is prohibited from doing. He cites *State v. Garza*, 295 Kan. 326, 286 P.3d 554 (2012), and *State v. Blaylock*, No. 104,146, 2011 WL 420730 (Kan. App. 2011) (unpublished opinion), as support for his contention. We carefully analyzed both cases and do not interpret their holdings to mean that a law enforcement officer's subsequent testimony about the DC-27 form is restricted to the singular reason that they may have chosen to reduce to writing on that form. In *Garza*, the State argued that Michael Garza violated K.S.A. 8-1514(a), the statute prohibiting driving left of center. But the district court applied K.S.A. 8-1522, the statute for failing to maintain a single lane, which the State did not allege supported the officer's actions. In *Garza*, the mismatch was between what the State presented and what the district court evaluated. "The district court's failure to apply the officer's testimony to the violation alleged by the State requires reversal and a remand for further proceedings." 295 Kan. at 334. That is distinctly different from the facts of this case.

In *Blaylock*, there was again no identifiable discrepancy in the officer's bases for the stop. The officer claimed that Ronnie Joe Blaylock's tag light was not working and testified to that effect. It was during closing arguments that things went awry, when the State went beyond the details of the officer's testimony to include other traffic infractions Blaylock committed, which could have supported a stop. On appeal, a panel of this court declined to find the stop was supported by reasonable suspicion, stating: "The threshold question framed here is whether the State can bootstrap a different basis for reasonable

6

suspicion than was articulated by the officer *both at the time of the stop and upon testifying thereafter*. Our answer is no." (Emphasis added.) 2011 WL 420730, at *4. That also is not reflective of what happened in Morrow's case.

Thus, neither of the cases Morrow relies on for support answer the question of whether an officer can write one reason on the DC-27 form and later reference additional reasons while testifying. A panel of this court addressed that question in *Bowen v. Kansas Dept. of Revenue*, No. 117,708, 2018 WL 793804 (Kan. App. 2018) (unpublished opinion), which presented a similar factual context. "The officer is not required to state with any particularity what the reasonable grounds were. The officer may then supplement the information on his form at trial via competent testimony. [Citations omitted.]" 2018 WL 793804, at *4. The *Bowen* court extended our Supreme Court's reasoning on admitting a defendant's blood alcohol test or refusal to test. "The State may seek to establish a foundation for admission through the use of the completed DC-27 form, through competent testimony, or through a combination of the two." *State v. Baker*, 269 Kan. 383, 388, 2 P.3d 786 (2000). Here, KDOR supported the officer's reasonable suspicion to stop Morrow for driving while impaired through a combination of the completed DC-27 form and competent testimony from Deputy Wells. KDOR was not limited to considering only the single reason listed on the DC-27 to support the officer's reasonable suspicion that Morrow was driving while impaired. Wells was free to testify to all the observed behaviors which caused him to reasonably suspect that Morrow was driving under the influence. Because the district court did not err in finding that all the factors which the deputy observed could support reasonable suspicion of impairment, we affirm KDOR's suspension of Morrow's driver's license.

Affirmed.

7