No. 102,953

STATE OF KANSAS, *Appellant*, v. MICHAEL GARZA, *Appellee*.

(286 P.3d 554)

Opinion filed August 31, 2012.

*Jessie Akers*, assistant county attorney, argued the cause, and *Robin L. Hathaway*, county attorney, was on the briefs for appellant.

*Janine Cox*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Michael Garza challenges a Court of Appeals decision to reverse a district court's order suppressing drug evidence obtained during a traffic stop. Garza argues no jurisdiction existed for the appellate court to consider the State's appeal of the suppression order and that the Court of Appeals erred in finding the requisite reasonable suspicion existed to support the initial stop. We affirm the court's jurisdiction, reverse the appellate panel's determination that substantial competent evidence supported the traffic stop, and remand to the district court for additional factual findings regarding whether there was reasonable suspicion to support the stop.

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly after 2 a.m. on a clear and dry night, a Ulysses police officer traveling south down a city road observed what he believed to be one headlight of an oncoming car, traveling north, cross over into the officer's lane and then cross back before making a right-hand turn. The road was a two-way traffic street, meaning traffic traveled in both directions. It contained a clearly marked double yellow line in the center, indicating a no passing zone.

The officer testified that he observed the car cross over from 2 blocks away, but he admitted that he could not actually see the centerline at that distance in the dark. When asked whether he knew whether the driver crossed the center line, the officer testified that "[y]ou can't actually tell where he was at, but by the way the headlight is, you can tell that he crossed the center line being in my lane." These events were recorded by the patrol car's video recording system. The officer also admitted that the centerline was not visible on the video at the oncoming car's location. The officer pulled the car over, believing the driver had committed a traffic infraction by driving left of center.

Garza was a passenger in the stopped vehicle. While the driver underwent testing to determine impairment, Garza waited in the car as a second officer stood nearby. That officer saw Garza reach into the center console, pull out a baggy of green leafy substance, and attempt to hide it in his waistband. Garza was later charged with felonious possession of marijuana in violation of K.S.A. 2008

Supp. 65-4162(a)(3), and misdemeanor possession of drug paraphernalia, in violation of K.S.A. 2008 Supp. 65-4152(a)(2).

Garza filed a motion to suppress the drug evidence, claiming it was found during an illegal traffic stop because there was no evidence to show it was unsafe for the car to leave its lane of travel. At a hearing on the motion, the State argued the driver violated K.S.A. 8-1514(a), the statute prohibiting driving left of center. That statute does not contain a safety element; it requires that all vehicles remain on the right half of the roadway unless one of four exceptions applies. The State argued the driver was in violation of the statute, making the stop legal, because the testifying officer said he did not observe any applicable exceptions. But Garza argued the applicable law was K.S.A. 8-1522, which is the statute for failing to maintain a single lane. And it requires a showing that it was dangerous to switch lanes.

The district court granted Garza's motion to suppress. It ruled K.S.A. 8-1514 was inapplicable under a belief that it applied only to unmarked roads, and that K.S.A. 8-1522 applied to roadways containing marked lanes. Under K.S.A. 8-1522 and caselaw, the district court said the State was required to show an element of dangerousness to prove a statutory violation. In other words, it needed to be dangerous for the car to drift into the other lane before the drift would be considered a traffic infraction. The district court found that although the car may have driven slightly left of center, there was no evidence to show it was unsafe to do so. The drug evidence was suppressed, and, following a short discussion on how to proceed, the district court dismissed the case. The State appealed.

The Court of Appeals reversed. It held the district court relied on the incorrect statute and the State did not need to show it was unsafe for Garza's car to cross over the centerline. The panel also made a specific determination that there was substantial competent evidence in the record to support a finding that the car crossed the centerline dividing the lanes of traffic traveling in the opposite direction, which was a violation of K.S.A. 8-1514(a). *State v. Garza,* No. 102,953, 2010 WL 3853222 (Kan. App. 2010) (unpublished opinion). We granted Garza's petition for review, which challenges

the panel's jurisdiction to hear the case and its substantive holding reversing the district court.

JURISDICTION

Before reaching the merits of Garza's claim, we must first address his argument concerning appellate jurisdiction. Garza claims the Court of Appeals erred in holding that it had jurisdiction when the State appealed from the district court's dismissal order rather than taking an interlocutory appeal from the suppression order.

Subject to certain exceptions not relevant in this case, Kansas appellate courts generally have jurisdiction to entertain an appeal only if that appeal is taken in the manner prescribed by statute. *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). Additionally, an appellate court only obtains jurisdiction over the ruling identified in the appeal. See *State v. G.W.A.*, 258 Kan. 703, 705-06, 906 P.2d 657 (1995). The interpretation of statutes and the determination of jurisdiction involve questions of law over which this court has unlimited review. *State v. Roberts*, 293 Kan. 29, 33, 259 P.3d 691 (2011).

In its notice of appeal, the State said it was appealing "all issues from . . . the Suppression Hearing on July 14, 2009." In its subsequent docketing statement, the State relied upon K.S.A. 22-3602(b)(1), which permits appeals from a case dismissal. Garza argues the exclusive method of appealing the suppression order was by interlocutory appeal under K.S.A. 22-3603. The failure to do so, he contends, eliminated appellate court jurisdiction.

In denying Garza's jurisdictional claim, the Court of Appeals recognized that a similar argument was raised and denied by this court in *State v. Huff*, 278 Kan. 214, 92 P.3d 604 (2004). In *Huff*, the district court granted the defendant's motion to suppress and immediately dismissed the case *sua sponte*. In the State's notice of appeal, it similarly appealed from the dismissal under K.S.A. 22-3602(b)(1) rather than from the suppression of evidence under K.S.A. 22-3603. 278 Kan. at 217. This court rejected Huff's argument that the State should have filed an interlocutory appeal under K.S.A. 22-3603. We found the suppression of evidence and the case's dismissal to be "one and the same," making the State's ci-

tation of the statute authorizing an appeal from the dismissal sufficient. 278 Kan. at 218-19. The *Huff* court also held that the State's indication in its notice of appeal that it was appealing the district court's " 'decision' " was general enough to put the defendants on notice that the suppression issue would be addressed. 278 Kan. at 219.

The jurisdictional argument Garza raises is as unpersuasive now as it was in *Huff*. Garza's case was dismissed in the same hearing the evidence was suppressed, similarly making the suppression and dismissal "one and the same." Accordingly, an appeal from the dismissal was proper. Moreover, just as in *Huff*, the State's notice of appeal here said it was appealing "all issues from . . . the Suppression Hearing on July 14, 2009." The State's initial notice of appeal was broad and general enough to have put Garza on notice it was appealing the suppression ruling. And unlike Garza's assertion that the State initially gave no indication it would appeal, the State said at the conclusion of the hearing that it would like the video of the traffic stop to be made part of the record on appeal, and that it was requesting a transcript.

The Court of Appeals correctly held the State's notice of appeal was appropriate, supporting its jurisdiction to decide the merits. *Garza*, 2010 WL 3853222, at *3. Thus, this court's jurisdiction is proper under K.S.A. 22-3602(e) (review of Court of Appeals decision). We now turn to Garza's claim concerning the suppression of evidence.

SUPPRESSION OF EVIDENCE

Garza argues the district court properly suppressed the evidence in his case because the officer lacked reasonable suspicion to stop the vehicle in which he was a passenger. He urges this court to overturn the Court of Appeals' decision reversing the suppression order.

*Standard of Review*

An appellate court reviews a district court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, the district court's findings of fact are reviewed to de-

termine whether they are supported by substantial competent evidence. A de novo standard of review is then used to review the ultimate legal conclusion regarding the suppression of evidence. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007); see *Huff*, 278 Kan. at 219.

Garza urges this court to employ a more lenient negative finding standard based upon the district court's determination that the State failed to meet its burden of proving the traffic stop was lawful. Garza relies on *Lostutter v. Estate of Larkin*, 235 Kan. 154, Syl. ¶ 1, 679 P.2d 181 (1984), to argue that this court must find the trial court displayed an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice.

But as noted by the Court of Appeals, Garza's position is contradicted by this court's decision in *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009). In *Marx*, the defendants also asked this court to apply a more lenient negative finding standard of review since any ruling adverse to the party with the burden of proof is considered a negative finding. This court rejected the request, holding that "such a deferential standard should not be, and in practice has not been, actually applied to undermine the de novo, independent review of legal questions with which appellate courts are properly imbued." *Marx*, 289 Kan. at 661. We retain the same sentiment now as we did in *Marx*, and decline to adopt the negative finding standard Garza asks us to use.

This case also requires an interpretation of two traffic infraction statutes—K.S.A. 8-1514 and K.S.A. 8-1522. This court has unlimited review over questions of statutory interpretation. See *Marx*, 289 Kan. at 660.

*Discussion*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Section 15 of the Kansas Constitution Bill of Rights provides identical protection from unlawful government searches and seizures. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). A

seizure occurs when an officer has in some way restrained the liberty of a citizen by means of physical force or show of authority. *State v. Greever*, 286 Kan. 124, 135, 183 P.3d 788 (2008) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). When a law enforcement officer stops a vehicle on a public roadway, a seizure has occurred. *Marx*, 289 Kan. at 661.

Under *Terry*, which is codified at K.S.A. 22-2402, a law enforcement officer may stop someone in a public place without making an arrest when the officer knows of specific and articulable facts creating a reasonable suspicion that the person is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1); *Marx*, 289 Kan. at 661. The State can often establish that its interests outweigh the intrusion on individual rights by showing the officer's pre-stop observations of a traffic infraction, because a traffic infraction provides an " ' "objectively valid reason to effectuate a traffic stop, even if the stop is pretextual." ' " *Marx*, 289 Kan. at 662 (citing *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 [2007]).

Garza's argument asks us to consider whether the officer's stop was based on reasonable suspicion that the driver committed a traffic infraction. But a wider issue must be addressed concerning which statute the district court should have applied to the facts of the case: K.S.A. 8-1514 as argued by the State, or K.S.A. 8-1522 as argued by Garza. At the suppression hearing, the district court considered these two competing statutes before ultimately applying K.S.A. 8-1522 as advocated by Garza.

It was an undisputed fact at the hearing that the stop occurred on a two-way city street marked by a yellow line in the center. Based on this scenario, the State argued the driver drove left of center, triggering application of K.S.A. 8-1514(a). That statute provides: "Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway." It states four exceptions to this rule: (1) when overtaking and passing another vehicle proceeding in the same direction; (2) when an obstruction exists making it necessary to drive left of center on the highway; (3) upon a roadway divided into three marked traffic lanes; and (4) upon a roadway restricted to one-way traffic. K.S.A. 8-1514(a)(1), (2), (3), and (4). The State argued that because the officer saw the car drive

left of center, and because no exceptions to the rule applied, the traffic stop was authorized.

In *State v. Hopper*, 260 Kan. 66, Syl. ¶ 2, 917 P.2d 872 (1976), this court held that driving left of center is an absolute liability offense and that K.S.A. 8-1514(a) "contains no intent element and requires that all vehicles be driven on the right half of the roadway, subject to four exceptions." In that case, the defendant was stopped after drifting left of center, but he argued for an exception because the road conditions were icy. This court declined to recognize that exception. *Hopper*, 260 Kan. at 70-72. The posture of *Hopper* is similar to this case in that the State argued before the district court that no exceptions applied when Garza drove left of the centerline.

Without claiming entitlement to any exceptions, Garza argued an entirely different statute applied—K.S.A. 8-1522—though defense counsel said at the suppression hearing that K.S.A. 8-1522 "supplements" K.S.A. 8-1514 by discouraging unsafe lane changes. Curiously, rather than challenging the State's assertion that K.S.A. 8-1514 applied, defense counsel initially said the ultimate question for the district court was a factual one: whether there was significant evidence the vehicle crossed the centerline. K.S.A. 8-1522 states in relevant part:

"Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Garza relied on *Kansas v. Ross*, 37 Kan. App. 2d 126, 130, 149 P.3d 876, *rev. denied* 284 Kan. 950 (2007), which held that a traffic violation under K.S.A. 8-1522 requires the defendant's vehicle must not only move from its lane of travel, but also do so when it is not safe. To further supplement his argument, Garza cited *United States v. Maldonado*, 614 F. Supp. 2d 1179, 1181 (D. Kan. 2009), a federal case relying on *Ross* that held K.S.A. 8-1522 was not violated during a minor lane drift in which no safety concern was demonstrated by the State. Relying on *Maldonado*, the district court agreed with Garza, considered the officer's testimony under

K.S.A. 8-1522, and held that the statute required the State to show the lane drift was accompanied by a dangerous situation, which the court found the State failed to do.

But the district court's decision was erroneous for two reasons. First, the officer's testimony more correctly fit within the parameters of K.S.A. 8-1514 in this case because it is specific to driving left of center. Second, the district court should have considered only the statute the State alleged Garza violated.

K.S.A. 8-1514 is specific to driving left of center. See *Hopper*, 260 Kan. at 70; *State v. Chavez-Zbarra*, 42 Kan. App. 2d 1074, 1077, 221 P.3d 606 (2009) (applying statute when driver crossed centerline on two-lane road; K.S.A. 8-1522 applies to roads with two lanes traveling same direction). Since the officer testified his reason for the stop was that he saw the car's headlight in the officer's lane on a two-way roadway marked with a double yellow line, and actually used the terminology "left of center," the district court should have applied K.S.A. 8-1514. And contrary to the district court's decision, nothing in K.S.A. 8-1514 suggests the statute applies only to unmarked roads. When a statute is plain and unambiguous, this court looks to its plain language. *State v. King*, 293 Kan. 1057, 1060, 274 P.3d 599 (2012). K.S.A. 8-1514 on its face does not make any restriction for unmarked roads.

We also observe that while either statute could have applied depending on the evidence and circumstances, ultimately the district court should have narrowly considered the evidence in light of the only statute the State claimed was violated—K.S.A. 8-1514(a). After all, it is the State's function to allege that a crime has been committed. See K.S.A. 22-2104 (all prosecutions are brought in the name of the State); K.S.A. 22-2301(1) (prosecution begins by filing complaint.) And in this case, the State alleged the officer's actions were proper under K.S.A. 8-1514, so the district court should have considered the evidence under that statute alone. The district court's failure to apply the officer's testimony to the violation alleged by the State requires reversal and a remand for further proceedings.

That does not end our inquiry, however, because the Court of Appeals went further by engaging in appellate fact finding to hold

that substantial evidence existed in the record to find a valid traffic stop occurred under K.S.A. 8-1514(a). This determination was based upon the testifying officer's description of events before stopping the vehicle in which Garza was a passenger: "I observed the vehicle's headlights cross over the—*into my lane*, and then cross back into the other lane, and make a right-hand turn." (Emphasis added.) The Court of Appeals observed, "Although the district court's findings are equivocal, it appears the district court did find that, however slightly, the car drove left of center." *Garza*, 2010 WL 3853222, at *6.

But what the district court actually said is different. It held: "In looking at the video it is my opinion that there was a left of center, although it was slight. I could not see any way to gauge the degree to which the car did cross the center line. It may even just barely [have] touched it, *I don't know*." (Emphasis added.) Such unclear findings cannot serve as a basis for making the determinations required of the legal issues presented. The Court of Appeals made its own factual findings when it held the officer had a reasonable suspicion under the statute to justify the traffic stop. This is contrary to the function of an appellate court, which does not serve as a finder of fact. See *Huff*, 278 Kan. at 219 (appellate court analyzing motion to suppress order does not reweigh evidence).

It was error for the Court of Appeals to uphold the traffic stop after determining the trial court applied the wrong statute. We reverse that aspect of the Court of Appeals' decision. We remand the case to the district court for additional findings based on application of K.S.A. 8-1514(a), which is the only statute alleged by the State to have been violated, to determine whether Garza's motion to suppress should be sustained.

Reversed and remanded.

\* \* \*

JOHNSON, J., dissenting: I respectfully dissent, because I believe that giving effect to a statute's plain and unambiguous language means to read the words literally, not figuratively, especially where due process and the rule of lenity are in play. Further, I take issue

with the majority's declaration that K.S.A. 8-1514(a) creates an absolute liability offense.

Beginning with the plain and unambiguous language of K.S.A. 8-1514(a), it directs that "a vehicle shall be driven upon *the right half of the roadway.*" (Emphasis added.) Literally, that would mean that, on a 20-foot-wide roadway, the vehicle would have to be driven on the right 10 feet, regardless of what might be painted on the road's surface. K.S.A. 8-1514(a) does not refer to a "lane" on the roadway. *Cf.* K.S.A. 8-1522(a) ("A vehicle shall be driven as nearly as practicable entirely within a single lane . . . ."). It does not refer to the "center line of the roadway," as does a provision later in the same statute. See K.S.A. 8-1514(c) (upon roadways with 4 or more lanes, "no vehicle shall be driven to the left of the center line of the roadway"). Yet, the majority appears to measure whether Garza complied with K.S.A. 8-1514(a) by looking at the evidence of whether Garza's vehicle crossed over the double-yellow "centerline" and whether the officer saw Garza driving in the officer's "lane."

Contrary to the majority's assertion that K.S.A. 8-1514(a) is the more specific statute, the concepts of lanes and centerlines are only specific to other statutory provisions, *e.g.*, K.S.A. 8-1522. Indeed, K.S.A. 8-1514(a) begins with the disclaimer that it only applies to "all roadways of sufficient width." That proviso makes scant sense in the context of "any roadway [that] has been divided into two (2) or more clearly marked lanes for traffic." K.S.A. 8-1522. Rather, the prefatory qualification indicates to me that the legislature intended K.S.A. 8-1514(a) to be the *general* provision applicable to all roadways, including those that have no lane markings or no hard surface.

In other words, while the determination of whether Garza drove his vehicle "left of center" might be applicable to K.S.A. 8-1514(a), a determination of whether Garza "drove left of the center line" is not. I did not see any evidence in the record that the centerline here was actually painted at the center of the roadway. Moreover, even if the two yellow lines are, respectively, equidistant from the edges of the roadway, the center of the roadway would fall in between the two lines. Accordingly, Garza could have driven upon

the right yellow line—touched the line as the district judge found—and still have been in compliance with K.S.A. 8-1514(a)'s directive to drive on "the right half of the roadway."

The majority's interpretation of K.S.A. 8-1514(a) in terms of other statutory provisions, *i.e.*, reading right half of the roadway to mean entirely within a single lane, does not feel like due process of law. Moreover, the majority appears to be giving the State the benefit of an assumption that the centerline is the measure of the right half of the roadway. In my view, that turns the rule of lenity on its head. The statute should be strictly construed in Garza's favor. Accordingly, on remand, I would direct that the district court determine whether the State has proved that Garza failed to drive on the right half of the roadway, rather than whether the vehicle crossed over the centerline.

Finally, I want to address the majority's reference to the holding in *State v. Hopper*, 260 Kan. 66, Syl. ¶ 2, 917 P.2d 872 (1976), that K.S.A. 8-1514(a) is an absolute liability offense, albeit I doubt that it makes any difference in this case. If the police officer observed Garza driving on the left side of the roadway for no apparent reason, an investigatory detention was warranted regardless of Garza's state of mind. Nevertheless, I would point out that *Hopper* was decided in 1976. More recently, we exercised more restraint in declaring strict liability crimes. In *State v. Lewis*, 263 Kan. 843, 857, 953 P.2d 1016 (1998), we observed that our criminal code was based almost entirely on the recommendations of the Kansas Judicial Council and that those recommendations included the following comment: " '[K.S.A. 21-3204] represents an effort to *limit strict liability crimes* to those situations where the penalty is relatively mild and *where the legislature has **clearly** indicated an intention to dispense with criminal intent.*' " (Emphasis added.) Granted, even more recently we retreated from the requirement of a clearly indicated legislative intent to return to our practice of divining on our own when absolute liability is inherently indicated by a statute. See *State v. Greever*, 286 Kan. 124, 138, 184 P.3d 788 (2008). Still, it seems counterintuitive to say there is absolute liability for failing to drive on the right half of the roadway when the legislature has set forth a number of exceptions to that directive

and explicitly made sufficient roadway width a condition precedent to liability. I would forego the holding on absolute liability.