NOT DESIGNATED FOR PUBLICATION

No. 122,559

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAURECE JAHNEL ROBINSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Opinion filed December 17, 2021. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., MALONE and BUSER, JJ.

PER CURIAM: Maurece Robinson was convicted of drug crimes after a search of his rental car turned up a large amount of marijuana. On appeal, he argues that the statute authorizing the traffic stop is unconstitutionally vague and that the district court erred in denying his request for a dispositional departure sentence. We conclude the statute is not void for vagueness, as it is clear about what it prohibits and contains objective enforcement mechanisms. And the district court's decision to impose a prison sentence was not unreasonable. We therefore affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Ford County Sheriff's Deputy Ryan Davis was stationed along Highway 54 on the west side of Bucklin, Kansas. Highway 54 runs east-west through Bucklin, and within Bucklin it is a four-lane road (with two lanes traveling eastbound and two lanes traveling westbound). East of Bucklin, Highway 54 continues as a four-lane road for about 0.3 miles past the city limit before merging back into a two-lane highway. A "Welcome to Bucklin" sign alerts drivers when they enter the town from the west, but there are no signs flagging the end of city limits to eastbound drivers leaving town.

The official eastern boundary of Bucklin is Seacat Road; Deputy Davis knew this to be the case, as he had previously looked it up. In the 0.3-mile stretch from Seacat Road to the point where eastbound Highway 54 returns to a single lane, the right lane runs parallel to a Kansas Department of Transportation site with gravel pits and other road crew materials. In this stretch of road, there are three turn-offs from the right lane into the KDOT site for state vehicles.

While he was stationed on Highway 54, Deputy Davis noticed a rental car with Alabama license plates traveling eastbound through Bucklin in the left lane. Because rental cars in Bucklin, in his experience, are more likely to be involved in criminal activity, Deputy Davis began following the car as it left town. In the short stretch of road outside Bucklin before the lanes merge, the car remained in the left lane. After observing this action, Deputy Davis stopped the car for failing to drive in the right lane under K.S.A. 2017 Supp. 8-1522(c).

Robinson was the driver and sole occupant of the car. Robinson explained that he was driving home to Minnesota from Arizona, where he had visited his daughter for four days. Davis found this explanation and the fact that Robinson had luggage in the back seat suspicious. While writing a warning and conducting a records check, Davis asked

2

another deputy to come with a K-9 unit, and a second deputy arrived in less than two minutes. Neither deputy smelled drugs, but they requested—and Robinson consented to—a K-9 sniff of the car's exterior. The dog alerted on Robinson's trunk, signaling drugs were present. The deputies then searched the trunk and immediately found a backpack containing about 3.3 pounds of marijuana in vacuum-sealed packaging. They also found a vacuum sealer in the luggage in the back seat.

The State charged Robinson with possession of marijuana with intent to distribute and possession of drug paraphernalia. Robinson filed a pretrial motion to suppress, in which he argued, in part, that the traffic stop was unlawful because eastbound drivers had no notice of when they were leaving Bucklin city limits—and thus when they had to drive in the right lane—causing arbitrary enforcement of K.S.A. 2017 Supp. 8-1522(c). According to Robinson, this arbitrary enforcement violated his constitutional right to due process of law.

The court heard evidence and oral argument on the motion and ultimately denied it. In its ruling, the court noted that it believed the traffic rule Deputy Davis relied upon—requiring cars to drive in the right lane when there is more than one lane of traffic in one direction—was unreasonable in this circumstance. The court opined that it was "really unsafe to require someone to swerve into the right lane" outside of Bucklin for the 0.3-mile stretch before the eastbound lanes merge. But despite these reservations, the court found K.S.A. 2017 Supp. 8-1522(c) was enforceable and the stop valid.

At the subsequent bench trial, Robinson renewed his motion to suppress, arguing that he had no notice of when he left Bucklin and therefore no notice of when K.S.A. 2017 Supp. 8-1522(c)'s requirement to drive in the right lane became effective. The court again denied the motion, and Robinson lodged a continuing objection to all evidence obtained from the search. At the close of evidence, the court convicted Robinson on both charges.

After trial, based on the parties' agreement, Robinson moved for a downward durational departure to 36 months, with the opportunity to request probation. The court granted the durational departure but declined to grant probation, sentencing Robinson to 36 months in prison. Robinson appeals.

## DISCUSSION

Robinson's appeal again challenges his convictions and sentence, though his arguments have evolved to some extent. Instead of challenging the application of K.S.A. 2017 Supp. 8-1522(c) to his case, Robinson argues that the statute itself is unconstitutionally vague and cannot be enforced against him given the lack of a sign denoting the end of Bucklin's city limit. He also continues to argue that given his background and the circumstances of his case, the district court should have placed him on probation instead of ordering him to serve a prison sentence. After carefully reviewing the record and the parties' arguments, we affirm Robinson's convictions and sentence.

1. *K.S.A. 2017 Supp. 8-1522(c) is not unconstitutionally vague.*

Appellate courts exercise unlimited review over challenges to the constitutionality of a statute. *State v. Harris*, 311 Kan. 816, 821, 467 P.3d 504 (2020). We presume a statute is constitutional and resolve all doubts in favor of a statute's validity. *State v. Jenkins*, 311 Kan. 39, 53, 455 P.3d 779 (2020). The party challenging a statute as vague bears the burden of overcoming the presumption of constitutionality. 311 Kan. at 53. A statute is not unconstitutionally vague "'simply because difficulty is found in determining whether certain marginal offenses fall within [its] language.'" *Hearn v. City of Overland Park*, 244 Kan. 638, 641, 772 P.2d 758 (1989).

To survive a vagueness challenge, a statute "must clear two distinct—albeit relatively low—hurdles." *Harris*, 311 Kan. at 821.

4

- Under the Fourteenth Amendment's Due Process Clause, a statute must put people on notice of what it prohibits. 311 Kan. at 821-22. Our inquiry is "'whether a person of ordinary intelligence understands what conduct is prohibited by' the statutory language at issue." *State v. Richardson*, 289 Kan. 118, 125, 209 P.3d 696 (2009).

- Under the separation of powers doctrine inherent in our constitutional structure, the statute must adequately guard against arbitrary and unreasonable enforcement. *State v. Gonzalez*, 307 Kan. 575, 580, 412 P.3d 968 (2018). A statute cannot be so broad that it fails to provide explicit enforcement standards, effectively delegating the legislative task of defining the statute's parameters to law enforcement and the courts. *Harris*, 311 Kan. at 822.

Although statutes that run afoul of this second hurdle are considered unconstitutionally "vague," their text is often very clear. 311 Kan. at 823. It is the overbreadth of these statutes, rather than their wording, that renders them ambiguous; they invite arbitrary enforcement by creating "a world in which 'almost anyone can be arrested for something.'" 311 Kan. at 823.

The statute at issue, K.S.A. 2017 Supp. 8-1522(c), provides:

"Upon a highway located outside the corporate limits of any city divided into two lanes of traffic proceeding in the same direction, all vehicles shall be driven in the right lane except when:
(1) Overtaking and passing another vehicle;
(2) preparing to make a proper left turn;
(3) otherwise directed by official traffic-control devices; or
(4) otherwise required by other provisions of law."

5

Before interpreting and analyzing this statute, we must address two preliminary matters.

*First*, the parties disagree over whether Robinson's present vagueness challenge may be presented on appeal, given the difference between this argument and those he raised in his motion to suppress and at trial. Robinson asserts that his vagueness argument is a logical extension of his earlier arguments, which similarly raised questions of notice and arbitrary enforcement. But the State points out that the issues at trial focused on whether Robinson had notice that he was outside Bucklin city limits—that is, whether K.S.A. 2017 Supp. 8-1522(c) applied at all—not whether the statute was sufficiently clear as to what it required. And likewise, the enforcement question at trial was how often Deputy Davis and other officers stopped people on this 0.3-mile stretch of highway for failing to drive in the right lane, not whether K.S.A. 2017 Supp. 8-1522(c) led to arbitrary enforcement by providing officers too much discretion as to what violates the law. In light of these differences, we agree with the State that the argument Robinson raises in his appeal was not raised before the district court.

As a general rule, issues not raised before the district court—including constitutional issues—cannot be raised on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018); see *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). This is because appellate courts are courts of review. When a party presents an issue in an appeal that was not raised below, it deprives the district court of the ability to consider the argument and conduct an error-free trial. It also deprives the appellate court of a record to review—there are no previous articulations of the argument to consider and no reasoning by the district court to evaluate. Robinson acknowledges this hurdle, but he argues that we should nevertheless consider his vagueness argument because it involves a purely legal question arising on proved or admitted facts and would be finally determinative of the case. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). We agree that whether a statute is void for vagueness turns on principles of statutory interpretation and

due process—pure questions of law that do not require a trial record. We thus exercise our discretion to consider the merits of Robinson's vagueness claim.

*Second*, the State suggests that the argument Robinson raised before the district court regarding the Bucklin city limits—and some of the arguments he raises on appeal—are unfounded. The State asserts that Bucklin traffic laws may also require drivers to drive in the right lane, and therefore Davis had reasonable suspicion to stop Robinson no matter where city limits ended. Bucklin's city code incorporates the Standard Traffic Ordinance for Kansas Cities (STO) by reference. Code of the City of Bucklin, Kansas § 14-101. STO § 38(a)(1) requires drivers to drive "upon the right half of the roadway" unless "overtaking and passing another vehicle proceeding the same direction." Standard Traffic Ordinance for Kansas Cities, art. 8, sec. 38(a)(1), p. 61 (48th ed. 2021). But STO 38 is virtually identical to K.S.A. 8-1514, which applies specifically to driving left of center on a two-lane road. *State v. Garza*, 295 Kan. 326, 334, 286 P.3d 554 (2012). In contrast, K.S.A. 8-1522 applies to roads with two lanes traveling in the same direction. 295 Kan. at 334. Within Bucklin, there are two lanes of traffic traveling in the same direction, so STO 38 is inapplicable. Robinson did not violate the law by driving in the left lane within city limits.

Having resolved these questions, we turn to the various arguments Robinson raises in his vagueness challenge. Robinson argues that the phrase "outside the corporate limits of any city" in K.S.A. 2017 Supp. 8-1522(c) is vague because drivers may not be on notice of where city limits end—and thus when K.S.A. 2017 Supp. 8-1522(c) applies. He asserts that without requiring signs or some other notice designating the end of city limits, drivers are left to guess when they must drive in the right lane, relying on factors such as speed limits, number of lanes, and whether there are surrounding buildings.

We disagree. The phrase "outside the corporate limits of any city" clearly defines where K.S.A. 2017 Supp. 8-1522(c) applies. Drivers have notice of what the statute

7

prohibits, despite Bucklin's lack of signage for eastbound drivers. They must drive in the right lane on highways outside city limits, unless one of the statute's exceptions applies. Robinson cites no authority suggesting that a statute must provide guidance so that drivers know the exact geographic boundaries of where it applies.

People are presumed to know the law. *State v. Taylor*, 54 Kan. App. 2d 394, 431, 401 P.3d 632 (2017). Just as there is a presumption that Robinson knows he must drive in the right lane on state highways when no exceptions to K.S.A. 2017 Supp. 8-1522(c) apply, he is also presumed to know where that law applies. Though the Bucklin city limits may not have been apparent on this stretch of road, that does not render K.S.A. 2017 Supp. 8-1522(c) vague. The statute is clear about what it prohibits—driving in the left lane without an applicable exception—and where it applies—outside the corporate city limits of any city.

As the State notes, many statutes prohibit conduct inside or outside city limits. See, e.g., K.S.A. 2020 Supp. 21-6308a(a) ("Unlawful discharge of a firearm is the reckless discharge of a firearm within or into the corporate limits of any city."). These statutes are not void for vagueness whenever a city lacks signs designating its official limits. And some of Bucklin's existing signs—for instance, the "Welcome to Bucklin" sign for westbound drivers—were well outside the official city limits. The logical implication of Robinson's argument would be to require every city in Kansas to add signs—or move existing ones—to their official boundaries. While there might be good prudential reasons for denoting a city limit, vagueness principles do not require such sweeping action.

A person of ordinary intelligence would know what K.S.A. 2017 Supp. 8-1522(c) prohibits—driving in the left lane on a highway outside city limits except to pass, make a left turn, or as the law or traffic-control devices otherwise direct. Under the first hurdle of

a vagueness analysis, "outside the corporate limits of any city" is not unconstitutionally vague because citizens are on notice of what conduct is prohibited.

Under the second vagueness hurdle, Robinson attacks K.S.A. 2017 Supp. 8-1522(c)'s exceptions. A panel of this court and the United States District Court for the District of Kansas have considered vagueness challenges to subsection (1) of K.S.A. 8-1522(c). *State v. Possemato*, No. 115,087, 2018 WL 297378 (Kan. App. 2018) (unpublished opinion); *United States v. Alvarado*, No. 14-10050-01-JTM, 2014 WL 2711910 (D. Kan. 2014) (unpublished opinion). Both cases found that subsection (c)(1) was constitutional because, although "[o]vertaking and passing another vehicle" could have a different meaning for different drivers, it effectively communicates that drivers must stay in the right lane except to pass. *Possemato*, 2018 WL 297378, at *4-5; *Alvarado*, 2014 WL 2711910, at *2-3.

Another panel discussed subsection (c)(1) when determining whether there was reasonable suspicion that a driver violated K.S.A. 2018 Supp. 8-1522(c), which contains the same language as K.S.A. 2017 Supp. 8-1522(c). *State v. Arceo-Rojas*, 57 Kan. App. 2d 741, 750-54, 458 P.3d 272, *rev. denied* 312 Kan. 893 (2020). That panel held, over a dissent, that there was reasonable suspicion the defendant was driving in the left lane without meeting any of K.S.A. 2018 Supp. 8-1522(c)'s exceptions when police observed her in the left lane without completing a pass for over 3 miles. 57 Kan. App. 2d at 753-54. Though not a vagueness challenge, the panel rejected the defendant's contention that because K.S.A. 2018 Supp. 8-1522(c)(1) does not define how long a driver can take to pass another vehicle, it is too difficult to determine when somebody violates the statute (and thus that there was no reasonable suspicion for the stop). 57 Kan. App. 2d at 750.

For subsections (c)(1) and (2)—"[o]vertaking and passing another vehicle" and "preparing to make a proper left turn"—Robinson's argument resembles the argument this court rejected in *Possemato*, 2018 WL 297378, at *4-5. Though subject to varying

9

interpretations, these provisions are not void for vagueness. Law enforcement can objectively determine whether a driver is in the left lane to pass or make a left turn based on context and indicators like a turn signal, distance, speed, whether there are other cars in the right lane, or whether there is a place to turn left. See *Arceo-Rojas*, 57 Kan. App. 2d at 753-54 (reasonable suspicion that driver was not passing when she was driving a similar speed as the car in the right lane without passing for several miles). There may be cases in which this determination is imperfect, but that does not render subsections (c)(1) and (2) unconstitutionally vague. And here, Robinson was neither passing nor preparing to make a left turn.

The next exception under the statute—subsection (c)(3), permitting a person to drive in the left lane when "otherwise directed by official traffic-control devices"—is similarly not unconstitutionally vague. K.S.A. 8-1442 gives clear standards for when this exception applies, defining "'[o]fficial traffic-control devices'" as "all signs, signals, markings, and devices, not inconsistent with this act, placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic." Thus, K.S.A. 2017 Supp. 8-1522(c)(3) has adequate, objective enforcement standards. There is also no allegation that there were official traffic-control devices directing Robinson to the left lane.

The final exception, subsection (c)(4), allowing drivers to drive in the left lane when "otherwise required by other provisions of law," does not lack adequate enforcement standards. If another statute requires drivers to drive in the left lane for some reason, this exception would permit it. Robinson asserts that K.S.A. 2017 Supp. 8-1522(a) requires driving in the left lane until a driver determines it is safe to change lanes. He argues that determining whether a lane change is "safe" under that provision invites arbitrary enforcement and, as the district court found, it may be *unsafe* to move to the right lane for 0.3 miles, then quickly merge back left. But whatever practical issues the statute might raise for drivers in specific situations, K.S.A. 2017 Supp. 8-1522(c)(4)

10

does not lack objective enforcement standards. And whatever issues could exist with subsection (a)'s enforcement standards, that provision is not before us.

K.S.A. 2017 Supp. 8-1522(c) gives drivers clear notice of what it prohibits—driving in the left lane of a state highway when an exception does not apply. The statute also has adequately objective enforcement standards. Thus, Robinson has not overcome the presumption of constitutionality—K.S.A. 2017 Supp. 8-1522(c) is not unconstitutionally vague.

Though Robinson raised other arguments before the district court, he has not pursued those challenges on appeal. Accord *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (an issue not briefed is deemed waived or abandoned). We thus affirm his convictions based on the evidence obtained in the traffic stop.

2. *The district court did not err when it denied Robinson's request for a dispositional departure sentence.*

Robinson also argues that the district court erred when it denied his request for a dispositional departure—that is, for probation instead of a prison sentence. Robinson points out that he is a Minnesota resident, is working towards a college degree, and is still recovering from a car accident that caused significant injuries and led him to turn to drugs in the first place. He argues that these circumstances rendered his Kansas prison sentence particularly disruptive, and the district court should have given these factors greater consideration at sentencing.

We review the denial of a departure sentence under an abuse of discretion standard. *State v. Farmer*, 312 Kan. 761, 763, 480 P.3d 155 (2021). A district court abuses its discretion if no reasonable person would agree with its decision, or if that decision is based on a legal or factual error. 312 Kan. at 763.

11

A defendant can generally appeal a departure sentence, including the extent of the departure. K.S.A. 2020 Supp. 21-6820(a); *State v. Looney*, 299 Kan. 903, 908, 327 P.3d 425 (2014). A departure sentence is unappealable only if a more specific statutory provision precludes that process. 299 Kan. at 909. One such provision prohibits an appeal from "any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." K.S.A. 2020 Supp. 21-6820(c)(2).

The State asserts that we lack jurisdiction to consider the denial of Robinson's motion because the district court granted a durational departure based on an agreement between the parties. But in *Looney*, the Kansas Supreme Court found that it had jurisdiction to consider an appeal when the parties agreed to a durational departure but not a dispositional departure. *Looney*, 299 Kan. at 904, 909. The facts here closely mirror those in *Looney*: Robinson and the State agreed to a durational departure, but not a dispositional departure. Robinson requested probation, and the State argued for imposing a prison sentence. There was no agreement barring an appeal from the denial of a dispositional departure, and thus there is no jurisdictional bar to Robinson's appeal of his sentence.

A sentencing court must impose the presumptive sentence under the sentencing guidelines absent substantial and compelling reasons for a departure. K.S.A. 2020 Supp. 21-6815(a). K.S.A. 2020 Supp. 21-6815(c) contains a nonexhaustive list of factors to consider when determining whether to depart from the guidelines. A sentencing court may consider other factors if the record contains evidence to support them and using them would conform to the guidelines' purposes. *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013).

For a reason to be substantial, it "must be real, not imagined, and of substance, not ephemeral." *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). To be compelling, it "must be one which forces the court, by the facts of the case, to abandon

12

the status quo" and impose a different sentence. 285 Kan. at 724. Even when there are substantial and compelling reasons that could warrant a departure sentence, the sentencing court has substantial discretion whether to depart from the guidelines. K.S.A. 2020 Supp. 21-6818(a) ("the sentencing judge may depart").

Here, the district court considered Robinson's arguments and ultimately granted a 65% downward durational departure (to a prison term of 36 months), citing the parties' agreement and Robinson's remorse as substantial and compelling reasons. But the court did not find that Robinson's stated reasons also justified a dispositional departure. This was not an abuse of discretion. Despite Robinson's accountability and desire to better his life, the court's finding that probation was inappropriate was reasonable given the drugs he possessed and the steps he took to avoid detection. And though Robinson has ties to Minnesota, he violated the law in Kansas and was subject to the consequences of his behavior in Kansas. The district court did not err when it granted Robinson's request for a durational departure sentence but denied his request for probation.

Affirmed.