NOT DESIGNATED FOR PUBLICATION

No. 128,555

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NEIL DOUGLAS BRUNGARDT,
*Appellant.*

MEMORANDUM OPINION

Appeal from Trego District Court; GLENN R. BRAUN, judge. Submitted without oral argument. Opinion filed May 22, 2026. Affirmed.

*Michael S. Holland II,* of Holland and Holland, of Russell, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., CLINE, J., and CAREY L. HIPP, District Judge, assigned.

PICKERING, J.:  Neil Douglas Brungardt appeals from the district court's denial of his motion to suppress. Brungardt claims the officer's reasonable suspicion to initiate the traffic stop was based on a mistake of law. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, Kansas Highway Patrol Trooper Brian Lee investigated a report of juveniles throwing items off an overpass on Interstate I-70. The report also

1

described a juvenile driving a pickup. The trooper spotted a pickup driving nearby on Old Highway 40. To determine whether he had identified the suspect or suspect vehicle, the trooper followed the pickup as it turned westbound onto an unmarked county roadway. The roadway was gravel and contained berms or "grading piles of sand on both sides of the roadway or at least on one side of the roadway[.]" The berms were located on the north side of the roadway.

The trooper saw the "vehicle while westbound go up and onto the grader berm several times" while "traveling at a slow rate of speed." The trooper observed the pickup drift onto the berm "to the point of where [he] thought that [the] vehicle would be basically sucked off into the ditch." At the preliminary hearing, the trooper testified that "[the vehicle] never left into oncoming traffic or subsequently into the ditch." However, after the trooper saw the vehicle drift into the far right of the lane for about twenty seconds and then overcorrect and swerve to the center of the roadway, the trooper stopped the vehicle for failure to maintain a lane.

After stopping the vehicle, the trooper noticed that the driver "was not a juvenile male who the county was suspecting to be perpetrating those crimes on the interstate." As the trooper approached the vehicle, he observed that the driver's window was rolled down and there was "a liquid pouring out of the vehicle underneath the driver's door onto the running board on the driver's side and then pooling on the ground next to the vehicle."

The trooper recalled how the driver "had bloodshot, watery eyes, slow lethargic body movements and slurred speech." He also detected a strong odor of alcohol emanating from both the vehicle and the driver. The trooper and the driver briefly spoke, and, in their conversation, the driver admitted to the open container.

When asking for identification, the trooper learned that the driver was Brungardt. The trooper then ran Brungardt's license and performed field sobriety tests. After

Brungardt refused a breath test, he was arrested for driving under the influence of alcohol and was transported to the Trego County Law Enforcement Center. Pursuant to a search warrant, Brungardt's blood was drawn, which indicated a 0.19 blood alcohol content.

The State charged Brungardt with two counts: (1) driving under the influence (DUI) of alcohol with two prior convictions, a severity level 6 nonperson felony under K.S.A. 8-1567(a)(2), (b)(1)(D); and (2) transportation of liquor in an open container, an unclassified misdemeanor under K.S.A. 8-1599. The district court held a preliminary hearing on March 15, 2023, where the trooper testified about the traffic stop. Based on the State's evidence, the district court found probable cause and bound over Brungardt on the charges.

Following the preliminary hearing, Brungardt moved to suppress all evidence obtained from the stop. Brungardt alleged he had not committed a traffic infraction and, thus, the trooper lacked reasonable suspicion to initiate the stop. The State responded that the trooper had a reasonable suspicion to initiate the stop because he witnessed Brungardt "failing to maintain his lane of traffic on the right side of the roadway."

In February 2024, the district court held a suppression hearing. After the hearing, the district court issued its ruling and denied Brungardt's suppression motion. The district court denied the motion to suppress based on "the video, . . . the transcripts of the preliminary hearing, . . . the evidence presented and statements of counsel." The court found that the trooper had reasonable suspicion to stop Brungardt's vehicle for failing to maintain a single lane. The court noted how the trooper's vehicle camera showed that Brungardt's "vehicle moves over to the right edge, slides back to the center, then comes back over to right edge then goes back over the center of the roadway in which the officer [viewed] as a failure to maintain single lane." Therefore, the trooper did have reasonable suspicion to stop the vehicle.

3

The case proceeded to a bench trial on stipulated facts. At the bench trial, the State sought to convict Brungardt for the DUI offense but dismissed the open container charge. Based on the parties' stipulations, the district court found Brungardt guilty of DUI. At sentencing, the court first imposed a controlling sentence of 18 months' imprisonment before suspending the sentence and ordering Brungardt to serve 24 months of probation.

Brungardt now appeals.

ANALYSIS

*The District Court Did Not Err in Denying the Motion to Suppress Because There Was Reasonable Suspicion to Justify the Traffic Stop*

*Standard of Review*

On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of the witnesses. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024).

*Discussion*

As an initial matter, the record on appeal does not contain a record of the February 2024 suppression hearing. Our courts have long held that "[i]t is the duty of an appellant to provide a transcript of all proceedings necessary for a review of a judgment rendered." *Crowder v. Lindbergh*, 175 Kan. 671, 672-73, 265 P.2d 851 (1954); Supreme Court Rule 6.02(a)(4), (a)(5) (2026 Kan. S. Ct. R. at 36) (appellant's claims of error must be supported with specific citations to record on appeal). Without such a record, an appellate

4

court presumes the district court's action was proper. *State v. Valladarez*, 288 Kan. 671, 686, 206 P.3d 879 (2009).

*Even without that presumption that the district court's ruling was proper, we still find no error.*

"When a law enforcement officer conducts a routine traffic stop on a public roadway, a seizure of the driver occurs within the meaning of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights." *State v. Cash*, 313 Kan. 121, 126, 483 P.3d 1047 (2021). A law enforcement officer's traffic stop of a citizen is "constitutionally reasonable" if the officer knows of "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). If a seized individual files a motion to suppress, then the State has the burden of proving that the seizure was reasonable. A traffic infraction is an "'objectively valid reason to effectuate a traffic stop,'" and the State may prove the officer effectuated a traffic stop because of a traffic infraction based on the officer's testimony and observations. 300 Kan. at 637.

Brungardt asserts the trooper lacked reasonable suspicion to initiate the stop because K.S.A. 8-1522 only applies to laned roadways—whereas Brungardt was not traveling on a laned roadway. He also contends that, even if K.S.A. 8-1514 applies, he did not violate it because the statute prohibits crossing into the left lane and the trooper stopped Brungardt for moving too far to the right of the lane.

The State contends the trooper had a reasonable suspicion that Brungardt violated K.S.A. 8-1514 when he observed Brungardt drive onto the grading berms. And the State claims that, under the objectively reasonable suspicion standard, the trooper's subjective belief that K.S.A. 8-1522(a) was the statutory basis for the traffic infraction is immaterial.

The State argues that Brungardt cannot rely on the trooper's testimony from the preliminary hearing because the State had no reason to produce testimony from the trooper to justify the stop at the preliminary hearing, and at the suppression hearing the State used the video evidence to support the stop.

K.S.A. 8-1522(a) provides:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.

"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

K.S.A. 8-1514(a) provides:

"(a) Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(2) When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

(3) Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or

(4) Upon a roadway restricted to one-way traffic."

Brungardt is correct that K.S.A. 8-1522 does not apply to the traffic stop because K.S.A. 8-1522 only applies to roadways with "marked lanes for traffic." While similar, K.S.A. 8-1522 and K.S.A. 8-1514 differ. K.S.A. 8-1522 only applies to marked

roadways, while K.S.A. 8-1514 applies to both marked and unmarked roadways. See *State v. Garza*, 295 Kan. 326, 334, 286 P.3d 554 (2012). The trooper provided testimonial evidence that the stop was on an unmarked roadway. Thus, K.S.A. 8-1514 applies, not K.S.A. 8-1522.

Reasonable suspicion can be based "on a mistaken understanding of the scope of a legal prohibition" and can "arise[] from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Heien v. North Carolina*, 574 U.S. 54, 60-61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). An officer's mistake must be reasonable, and a court does not "examine the subjective understanding of the particular officer involved." 574 U.S. at 66.

"To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien,* 574 U.S. at 60-61. "[T]he mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place." 574 U.S. at 66.

Here, Brungardt's illegal conduct gave rise to the trooper's reasonable suspicion to perform an investigatory stop. The trooper may have mistakenly cited to K.S.A. 8-1522, but he was correct that Brungardt's conduct—driving off the roadway and onto the berm—was illegal. Although the trooper cited K.S.A. 8-1522 as his basis for the stop, the State alleged that "[Brungardt] fail[ed] to maintain his lane of traffic on the right side of the roadway," which is essentially the title of K.S.A. 8-1514. The district court could properly consider the evidence based on whether Brungardt violated K.S.A. 8-1514. The State alleged and the district court found that driving off the roadway and onto the berm was illegal.

K.S.A. 8-1514 applies because Old Highway 40 is a roadway. K.S.A. 8-1459 defines a "'[r]oadway'" as a "portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." K.S.A. 8-1514 prohibits crossing the center line of a roadway, whereas K.S.A. 8-1522 prohibits failure to maintain a lane including crossing the right edge of the outside lane. *State v. Chavez-Zbarra*, 42 Kan. App. 2d 1074, 1077, 221 P.3d 606 (2009).

Brungardt contends that, even if K.S.A. 8-1514 applied, his conduct was not illegal because K.S.A. 8-1514(a)(2) and (b) acknowledge situations where a driver may not drive completely on the right-hand side, such as on "a gravel county roadway with a dirt berm." Further, Brungardt argues that K.S.A. 8-1514 prohibits driving into the left side of the roadway, not the right.

We disagree. K.S.A. 8-1514 does prohibit driving outside the roadway as Brungardt did here. The statute's language does allow a driver to drive towards the left of the center of a highway if an obstruction exists, such as on gravel roads with a dirt berm. See K.S.A. 8-1514(a)(2). This does not suggest that a driver is allowed to drive off the roadway onto the berm itself. The express language of K.S.A. 8-1514 allows a driver to cross into the left or into the center of the roadway to prevent the driver from driving off the roadway.

Based on the video of the stop and the trooper's testimony, the district court could properly find that Brungardt was not driving on a roadway; he was driving on the berm. Driving off the roadway is prohibited conduct; thus, the trooper was justified in effectuating the stop. The district court did not err when it found that the trooper had a reasonable suspicion to effectuate the stop.

Affirmed.